James M. ROBERTSON, et al.

v.

The NEUROMEDICAL CENTER, et al.

No. 95–1851–B–1.

United States District Court, M.D. Louisiana.

Oct. 29, 1996.

Mary Olive Pierson of Cooper & Pierson, Baton Rouge, LA, and James E. Boren, Baton Rouge, LA, for Plaintiffs James M. Robertson, M.D., and Victoria Robertson.

J. Rodney Ryan, Jr. and Michele Whitesell Crosby of Jones, Walker, Waecher, Poitevent, Carrere & Denegre, Baton Rouge, LA, for Defendants The Neuromedical Center, Thomas B. Flynn, John R. Clifford, Anthony S. Iopollo, Allen S. Joseph, Thomas P. Perone, L. Allen Proctor, Oscar L. Rogers, III,

Carolyn C. Baker, Susan L. Scarberry, and Barbara J. Golden.

## RULING ON MOTIONS TO QUASH, OR TO MODIFY SUBPOENAS

RIEDLINGER, United States Magistrate Judge.

This matter is before the court on motions to quash or in the alternative to modify subpoenas, filed pursuant to Rule 45(c)(2)(B), Fed.R.Civ.P., by Our Lady of the Lake Regional Medical Center and the Baton Rouge General Medical Center ("Hospitals"). The motions are opposed by the defendants, the Neuromedical Center and Drs. Thomas B. Flynn, John R. Clifford, Anthony S. Iopollo, Allen S. Joseph, Thomas P. Perone, and L. Allen Proctor, and Neuromedical Center employees Oscar L. Rogers, III, Carolyn C. Baker, Susan L. Scarberry, and Barbara J. Golden.

This action was initially filed in state court by the plaintiffs, Dr. James Robertson and his wife Victoria, and was removed by the defendants. Plaintiff James Robertson brought his claim under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and also alleged supplemental state law claims for discrimination,[1] breach of contract and personal injury. This discovery dispute arises out of deposition notices and subpoenas served on the hospitals by the defendants.

Defendants sought to depose the hospitals and inspect documents related to the plaintiff's abilities to meet his professional responsibilities, attendance at staff meetings and staff privileges. Defendants also sought information regarding the quality of the health care the plaintiff delivered to his patients, and his ability to work with colleagues and hospital staff.[2] The hospitals objected on grounds that the deposition notices and subpoenas called for production of information and documents that can only be obtained from the plaintiff's hospital credential file which is protected from discovery by a peer review privilege.[3] Defendants opposed the hospitals' objections contending that under Federal Rule of Evidence 501, federal law must be applied to the claim of privilege asserted by the hospitals, and that the hospitals have failed to establish both the existence and applicability of a peer review privilege to any of the discovery requested.

### Law Applicable to the Hospitals' Claim of Privilege

■ The hospitals relied upon LSA–R.S. 13:3715.3 which provides for the confidentiality of peer review committee records. The statute provides that certain categories of records cannot be obtained through discovery or by court subpoena, except that the records may be obtained by a physician in any proceedings affecting the hospital staff privileges of that physician. Baton Rouge General argued that even if federal law must be applied under Rule 501, federal common law should follow the state's policy as expressed in the peer review committee records statute. Our Lady of the Lake asserted that the issue of which law controls is largely irrelevant—what the court must decide is whether the defendants' interest in discovering the information outweighs the importance of keeping peer review information confidential.

Before deciding whether the hospitals' assertion of the peer review privilege can be maintained, the court must determine whether the privilege invoked is governed by state or federal law. The analysis must begin with the general rule set forth in Rule 501. The rule requires that federal common law gov-

---

1. LSA–R.S. 51:2231, et seq.

2. Exhibits attached to record document numbers 20 and 29.

3. As to specific requests, Baton Rouge General Medical Center stated that numbers 1, 3 and 4 sought information and documents that could only obtained by reference to and from the plaintiff's credentialing file. Baton Rouge General stated that it did not keep records of attendance at medical staff meetings and that it did not keep a record of the plaintiff's interaction with colleagues and hospital staff. Our Lady of the Lake stated that requested items 1, 4 and 5 called for production of peer review information protected from disclosure by state and federal law. Our Lady of the Lake conceded that numbers 2 and 3 might simply call for the production of nonprivileged data. Record document numbers 34 and 35.

ern a claim of privilege by a witness, except as otherwise required by the Constitution, an act of Congress, or a Supreme Court rule. However, if state law supplies the rule of decision as to an element of a claim or defense, the privilege claim is determined in accordance with state law.

Plaintiff alleged an ADA claim, as well as claims under the state statute prohibiting discrimination based on disability, LSA–R.S. 51:2231., et seq., and other state law claims based on defamation, breach of contract and intentional infliction of emotional distress. The parties to this dispute did not argue that some information would be relevant to some claims but not others, and it appears from a review of the items in dispute, that the information and documents requested would be relevant to both federal and state claims. As a practical matter the court cannot segregate the discovery into what would be relevant to the federal claim versus the state law claims.

The rule itself does not specifically address this situation. However, the advisory committee notes to Rule 501 recognize that such a problem might arise. The dilemma was also noted by the Fifth Circuit in *American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1343 n. 13 (5th Cir. Unit A 1981). Several different approaches might be taken: (1) since the state law provision is an exception to a general rule that mandates a federal law of privilege, courts should follow the federal rule when the same evidence is relevant to both a state and federal claim;[4] (2) a second method of resolving the conflict is to say that the state rule of privilege always prevails; (3) another approach is to apply the rule that would admit the evidence; (4) or, have no rule and resolve questions of conflicting privileges on an ad hoc basis.[5] 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice &*

*Procedure: Evidence,* § 5434, pp. 859–65. With the rule and Congressional intent unclear and no Supreme Court or Fifth Circuit decision directly addressing the issue, the court finds several recent court of appeal and district court decisions persuasive. *In re Combustion, Inc.,* 161 F.R.D. 51 (W.D.La. 1995), *aff'd,* 161 F.R.D. 54 (W.D.La.1995); *Hancock v. Hobbs,* 967 F.2d 462, 467 (11th Cir.1992); *Hancock v. Dodson,* 958 F.2d 1367, 1373 (6th Cir.1992); *Pagano v. Oroville Hosp.,* 145 F.R.D. 683, 687 (E.D.Cal.1993).

The *In re Combustion* decision involved pendent state law claims in the context of both CERCLA and Federal Tort Claims Act litigation. The *Hancock* decisions were both cases brought under 42 U.S.C. § 1983 with claims alleged under state law. Even though the present case is distinguishable, the courts' discussion of Rule 501 in the context of these decisions is convincing. Federal courts do not have exclusive jurisdiction over ADA claims,[6] however, the strength of the federal interests here cannot be denied given Congress' decision to legislate in this area and expand the protections provided to disabled Americans under the Rehabilitation Act of 1973.[7] But for the ADA claim, this case would not be in federal court. If only the federal claim had been brought by the plaintiff, federal privilege law would clearly apply. Under these circumstances the policy of Rule 501 should not be set aside simply because of the existence of pendent state law claims in primarily a federal question case. *Hancock v. Dodson, supra,* at 1373. Finally, as noted by the Eleventh Circuit in *Hancock v. Hobbs,* the weight of authority among courts that have confronted this issue in the context of discovery is that the federal law of privilege governs even where the evidence sought might be relevant to pendent state

---

4.  Where the issue was discoverability of the evidence, this was the position taken in early decisions with respect to pendent state claims in federal question litigation. 23 Wright & Graham, *Federal Practice and Procedure: Evidence* § 5434, p. 862.

5.  Wright and Graham also mentioned another option which is not applicable here because it involves introduction of the evidence at trial. Wright & Graham, p. 862.

6.  The court in *In re Combustion* noted that where the claims involved were CERCLA and FTCA, the federal interests were strong because both statutes provide for exclusive federal jurisdiction. *In re Combustion, supra,* at 54.

7.  *See,* 42 U.S.C. § 12101 (findings and purpose of the ADA).

law claims.[8]  Thus, federal law will be applied to the hospitals' privilege claim.

### Recognition of Peer Review Privilege Under Federal Law

■ The hospitals failed to adduce any controlling or persuasive authority for recognition of a peer review privilege under federal law. Although the hospitals noted all the differences between the facts of this case and *University of Pennsylvania v. Equal Employment Opportunity Commission*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), the Court's unanimous decision is still persuasive, even conceding the distinctions pointed out in the hospitals' memoranda. First, in *University of Pennsylvania* the Court reaffirmed the general principles that have also been followed by the Fifth Circuit—privileges are strongly disfavored in federal practice, and any privilege must be strictly construed since "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that 'the public ... has a right to every man's evidence.'" *University of Pennsylvania*, *supra*, at 189, 110 S.Ct. at 582; *see*, *Finch*, *supra*, at 1344. Though Rule 501 authorizes recognition of new privileges, the courts are not inclined to exercise this authority expansively, especially in an area where it appears that Congress has considered the competing concerns and has not established a privilege. *Id.*

The hospitals urge that their interest in protecting the confidentiality of sensitive peer review materials outweighs the defendants' interest in obtaining evidence necessary to defend against the plaintiff's claim of discrimination. They also maintain that this is especially true since the information the defendants seek can be easily obtained by deposing other doctors, nurses, and hospital staff, and searching the public records.[9] The hospitals also asserted that physicians have

relied on the privilege and it is unlikely that physicians would honestly evaluate their colleagues in its absence.

These same arguments were addressed by the Court in *University of Pennsylvania*. The Court did not question the assertion that confidentiality is important to the proper functioning of the peer review process in academic institutions. But the court noted that this was only one factor. Another is Congress' recognition of the substantial costs of racial and sexual discrimination in higher education. The Court recognized this as a great, if not compelling, governmental interest. Similarly, no one in this case questions the assertion that confidentiality is important to the proper functioning of the peer review process in hospitals. However, Congress chose to pass sweeping legislation in 1990 to protect disabled Americans from discrimination in employment, and place it under the same administrative and enforcement scheme as other forms of discrimination under Title VII. 42 U.S.C. § 12117. It is reasonable to conclude that in so doing Congress recognized the substantial costs of discrimination because of disability, and also made eliminating this kind of discrimination a matter of substantial governmental interest. The hospitals have no evidence to support their claim that physicians will be less honest in their evaluations if they know it is possible that they may not be kept confidential. In the absence of any support for this assertion other than the existence of the state confidentiality statute, this court, as the Court in *University of Pennsylvania*, is not ready to assume the worst about physicians engaging in hospital peer review processes.

There is no historical or statutory basis for a peer review materials privilege. *University of Pennsylvania*, *supra*, at 194–95, 110 S.Ct. at 585. The federal Health Care Quality Improvement Act of 1986 (HCQIA),

8.  *Hancock v. Hobbs, supra*, at 466, *citing*, *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir.1987); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir.1982); *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir.1981).

9.  In a sense this argument begs the question. If there is no privilege the defendants should not have to go to the additional time and expense of

alternative discovery methods. There is also some merit to the defendants' argument that the alternative discovery methods would be unduly burdensome and expensive, because the initial discovery would have to be very broad without preliminary information to focus the discovery efforts on the individuals with the most knowledge of the plaintiff's claims.

42 U.S.C. § 11101, et seq., provides qualified immunity for persons providing information to a professional review body regarding the competence or professional conduct of a physician. 42 U.S.C. § 11111(a). It also established confidentiality for information reported under the act, but did not establish confidentiality for peer review records or protect peer review records and materials from discovery and court subpoena. The absence of such a privilege in this statute is evidence that Congress did not intend these records to have the level of confidentiality and protection advanced by the hospitals and provided in the state statute.[10]

The only other avenue remaining for recognition of the peer review privilege is for the court to find the state statute sufficiently compelling, in light of reason and experience, to be applied as a matter of federal common law. The court in *Finch* addressed this inquiry and stated that in making this determination the court should balance the policies behind the asserted privilege against the policies favoring disclosure. *Finch, supra,* at 1343. The court noted that the fact that a particular state would recognize a given privilege would not often, by itself, justify a federal court in applying that privilege because there is a generally a substantial cost to the special federal interest in seeking the truth in a federal question case. *Id.* There are no factors such as the ones mentioned in *Finch* which weaken the federal interest here.

This is not a case where the substantive law is only nominally federal because it incorporates state law by reference. There has been no showing by the hospitals that state law issues predominate over federal issues. The Baton Rouge General noted that the vast majority of the claims asserted by the plaintiff are under state law. Yet, the number of claims alone does not say anything about the importance of the factual and legal issues raised by the claims, especially when all of the claims focus on the defendants' proffered legitimate business reasons for terminating the plaintiff. Finally, the hospitals have not demonstrated that the defendants can obtain substantially the same evidence by

an unprivileged route without undue hardship. *Finch, supra,* at 1343. The argument that the court should adopt the state's privilege statute as a matter of federal common law is unpersuasive in light of the factors outlined by the court in *Finch.*

Under Rule 26 parties may obtain discovery regarding any matter not privileged that is relevant to the subject matter of the pending action. The hospitals have failed to establish the existence of a peer review privilege applicable in this case. The hospitals did not argue as a basis for quashing or modifying the subpoenas that any of the documents or information sought was irrelevant, or not discoverable on some other grounds.

Accordingly, the motions to quash, or in the alternative to modify subpoenas, filed by Our Lady of the Lake Regional Medical Center and the Baton Rouge General Medical Center are denied.

---

**10.** *See, Pagano, supra,* at 693–94.