John W. SYPOSS, Jr., and Carol Syposs, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 97–CV–572S(F).

United States District Court, W.D. New York.

July 1, 1998.

---

Jasen, Jasen, & Sampson, P.C., Matthew J. Jasen, William E. Nowakowski, of counsel, Buffalo, New York, for Plaintiffs.

Denise E. O'Donnell, United States Attorney, Western District of New York, Lynn S. Edelman, Assistant United States Attorney, of counsel, Buffalo, New York, for Defendants.

Phillips, Lytle, Hitchcock, Blaine & Huber, Lisa McDougall, of counsel, Buffalo, New York, for Sisters of Charity Hospital.

Kenneth A. Schoetz, Erie County Attorney, Alisa A. Lukasiewicz, Assistant County Attorney, of counsel, Buffalo, New York, for Erie County Medical Center.

Notaro & Laing, Linda C. Laing, of counsel, Buffalo, New York, for Children's Hospital.

### DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This action was referred to the undersigned on May 26, 1998 for determination of any non-dispositive motions. The matter is presently before the court on Plaintiffs' motion to compel discovery, dated January 23, 1998; Plaintiffs' motions to enforce subpoenas issued to non-parties Sisters of Charity Hospital and Erie County Medical Center, dated April 13, 1998; non-party Children's Hospital of Buffalo's motion to quash Plaintiff's subpoena, dated April 14, 1998; and, Defendant's motion to amend the scheduling order, dated May 12, 1998.

### BACKGROUND and FACTS

Plaintiffs filed this action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.*, on July 16, 1997 alleging that Plaintiff John W. Syposs suffered personal injuries while undergoing medical treatment at the Veterans Administration Medical Center located in Buffalo, New York, which is operated by Defendant, United States of America. Defendant answered the complaint on September 15, 1997, and discovery has proceeded.

On January 23, 1998, Plaintiffs filed a motion to compel Defendant to respond to interrogatories and to document requests, along with a supporting memorandum of law. Thereafter, on April 13, 1998, Plaintiffs filed two motions, one seeking an order compelling non-party Sisters of Charity Hospital to comply and produce documents requested pursuant to a subpoena, and one seeking an order compelling non-party Erie County Medical Center to comply and produce documents requested pursuant to a subpoena. On April 14, 1998, non-party Children's Hospital of Buffalo filed a motion to quash the subpoena served on it by Plaintiffs on February 12, 1998.

On April 21, 1998, Defendant filed an affidavit in response to Plaintiffs' motion to compel, stating that responses to the interrogatories and document requests had been served on Plaintiffs on March 9 and March 10, 1998. Plaintiffs filed an affidavit in opposition to Children's Hospital's motion to quash on May 4, 1998, along with a memorandum of law. Children's Hospital filed an affidavit in support of its motion to quash on May 7, 1998. Meanwhile, on May 5, 1998, Erie County Medical Center filed an affidavit in opposi-

tion to Plaintiffs' motion to compel, and, on May 6, 1998, Sisters of Charity Hospital filed a memorandum in opposition to Plaintiffs' motion to compel. Plaintiffs filed further opposition papers in reply to Sisters of Charity Hospital and Erie County Medical Center's responses on May 11, 1998. Oral argument was deemed unnecessary.

### DISCUSSION

### 1. *Plaintiffs' Motion to Compel Responses from Defendant*

On January 23, 1998, Plaintiffs filed a motion to compel responses to their Interrogatories and Demands to Produce served on Defendant on September 22, 1997. Plaintiffs also requested that dates certain be set for depositions following receipt of the discovery responses. Further, Plaintiffs asked for an extension of time to disclose expert information as they required discovery responses prior to providing the expert information. In their supporting affidavit, Plaintiffs indicated that ongoing discussions had been held with Defendant's counsel, Assistant United States Attorney Lynn Edelman, who stated that she was in the process of obtaining the discovery responses and had been conferencing with Veterans' Administration officials to obtain the necessary materials. However, as of the date of the motion, no responses had been received. Thus, Plaintiffs seek responses, an amendment to the scheduling order, and reasonable attorney's fees and costs in bringing this motion.

On April 21, 1998, Defendant responded to the motion to compel, indicating that responses had been served on Plaintiffs on March 9, 1998, and a supplemental response on March 10, 1998. Defendant also noted that, while Plaintiffs' counsel had sent a letter to the court, dated March 13, 1998, indicating that they wanted to "revive the motion" to compel previously filed, Defendant's Affidavit, Exhibit D, dated April 21, 1998, because of objections raised by Defendant in its responses to Plaintiffs' discovery requests, no further motion, or list of specific arguments pertaining to Defendant's objections had been filed. As to Plaintiffs' request for dates certain to be set for depositions, Defendant opposed such request on the ground

that adjournments of the depositions occurred because of the ongoing document discovery, and that, since the time that the documents were produced, Plaintiffs had not sought to reschedule the depositions.

■ Upon a review of the record, the court finds that Defendant's responses of March 9 and 10, 1998 provided the relief which Plaintiffs sought in their motion to compel. To the extent that Plaintiffs take issue with Defendant's objections set forth in the discovery responses, Plaintiffs must file another motion to compel if such issues cannot be resolved as the court cannot entertain a discovery dispute that is not presently before it. Further, while the court will not set dates certain for the depositions, the parties are directed to reschedule the depositions within fifteen (15) days of this Order. Finally, the court at this time will not award attorney's fees and costs as it appears that Defendant was attempting to obtain the necessary discovery materials, and, while tardy in its responses, was not willfully refusing to provide the requested responses. Plaintiffs' motion to compel discovery from Defendant is thus DENIED as moot, without prejudice to the bringing of another motion to resolve Defendant's outstanding objections that cannot be resolved by counsel, if any.

### 2. *Plaintiffs' Motion to comply with nonparty subpoenas/ Children's Hospital of Buffalo's motion to quash the subpoena*

On April 13, 1998, Plaintiffs filed a motion to compel Sisters of Charity Hospital and the Erie County Medical Center to comply and produce documents requested pursuant to subpoenas issued to those non-parties. Specifically, Plaintiffs are seeking all records concerning peer review of procedures undertaken by Lorenzo T. Turuel, M.D., applications by Dr. Turuel for privileges at each named medical facility, and any supporting documents submitted in support thereof. On April 14, 1998, Children's Hospital of Buffalo filed a motion to quash a similar subpoena issued to it by Plaintiffs.

In response to the subpoena, Sisters of Charity Hospital objected to the requested material on the ground that it was privileged

under federal common law, § 6527(3) of the New York Education Law, § 2805–m of the New York Public Health Law, and under § 4504 of the New York Civil Practice Laws and Rules relating to doctor-patient privilege. Exhibit C, Motion to Compel Sisters of Charity Hospital. Sisters of Charity also set forth a privilege log listing the documents relevant to the subpoena. Erie County Medical Center, in response to the subpoena, sent a letter to Plaintiffs' counsel, dated February 23, 1998, also objecting to the disclosure of the materials, citing New York Public Health Law § 2805–m and New York Education Law § 6527. Children's Hospital of Buffalo has objected to supplying documents in response to the subpoena on the same grounds.

Plaintiffs argue that state law privileges do not apply to this federal action. Further, Plaintiffs contend that there is no recognized federal medical peer review privilege in either federal common law or federal statute. In response, Children's Hospital first asserts that there is a federal statutory peer review privilege set forth in the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11137(b). Second, all of the non-party hospitals (Sisters of Charity, Erie County Medical Center, and Children's Hospital) (hereinafter the "Hospitals") contend that peer review information is privileged in malpractice cases based on federal common law as there is no overriding federal interest in disclosure.

 Fed.R.Evid. 501 states that other than those privileges established by Constitution, federal statute, or federal rule, determinations of privilege are "governed by the principles of the common law as they may be interpreted by the courts." In a federal question case, such as the case at issue here, the federal common law of privilege is applicable, and not state statutory privilege. *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir.1987). Nonetheless, a federal court should bear in mind the interests protected by a state-recognized privilege and may incorporate the privilege to the extent consistent with the federal policies implicated in a case. *Wei v. Bodner*, 127 F.R.D. 91, 94–95 (D.N.J.1989).

 As noted, the state statutory peer review privileges asserted as controlling by the Hospitals are not conclusive in an action brought in federal court under federal law. *See Holland v. Muscatine General Hospital*, 971 F.Supp. 385, 388 (S.D.Iowa 1997). Rather, the recognition of new privileges in federal court evolves on a case-by-case basis. *See Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 1927, 135 L.Ed.2d 337 (1996). The analysis should balance "the public's need for the full development of relevant facts in federal litigation against the countervailing demand for confidentiality in order to achieve the objectives underlying the privilege in issue." 2 J. Weinstein, M. Burger, J. McLaughlin, *Weinstein's Evidence* ¶ 501[03], at 39–41. The balance does not often favor recognition of a new privilege unless it "promotes sufficiently important interests to outweigh the need for probative evidence." *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). The starting point in the analysis is always the "fundamental principle that 'the public ... has a right to every man's evidence.'" *Id.* (quoting *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). Privileges are disfavored in the law and must be strictly construed. *Id.*

 In *University of Pennsylvania v. EEOC, supra*, an action brought under Title VII of the Civil Rights Act of 1964, the Supreme Court held that neither federal common law nor the First Amendment warranted the recognition of a privilege for the peer review materials of a university. In that case, the EEOC sought disclosure of tenure review files. In rejecting the University's claim that the tenure review files were privileged, the Supreme Court observed that Congress, in extending Title VII to educational institutions, failed to create a privilege for peer review documents, and that any available privileges were to be strictly construed. *University of Pennsylvania, supra*, at 189–192, 110 S.Ct. 577. Further, the Court stated that new privileges were not to be created lightly. *Id.*

Many federal cases discussing the existence of a federal privilege for peer review

and related materials have arisen in the context of employment discrimination and antitrust cases. For example, in *Johnson v. Nyack Hospital*, 169 F.R.D. 550 (S.D.N.Y. 1996), a surgeon brought a race discrimination case against a hospital which had denied his application for staff privileges. The plaintiff surgeon sought peer review records from Defendant and other non-party hospitals for other physicians whose applications had been granted. Those hospitals, citing New York and New Jersey state privilege statutes, refused to comply with subpoenas issued by the plaintiff. In permitting the disclosure of peer review records, the court held that no federal privilege protected the confidentiality of medical peer review materials from various hospitals, citing *University of Pennsylvania*. Finding that the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 *et seq.*, gave qualified immunity from suit to officials who conducted peer reviews, but that the Act did not protect the documents created in the peer review process, the court concluded that Congress did not intend to establish any privilege for peer review documents. *Johnson, supra*, at 560.

A similar result was reached in *Swarthmore Radiation Oncology, Inc. v. Lapes*, 1993 WL 517722 (E.D.Pa.1993), an antitrust case regarding physicians' applications for staff privileges at a hospital, where the hospital refused to disclose staff privileges files on the ground that the files were protected by state and federal peer review statutes. Also citing *University of Pennsylvania*, the court noted that new privileges are not be created lightly, and found that the policies reflected in the Pennsylvania Peer Review Act were incompatible with the federal interest in fair competition embodied in the antitrust laws. *Swarthmore Radiation Oncology, supra*, 1993 WL 517722 at *3. The court further concluded that no federal statutory privilege existed under the Health Care Quality Improvement Act, as the Act only states that participants in legitimate peer review activities are immune from damages stemming from the peer review process, 42 U.S.C. § 11111(a)(1), and only information reporting adverse actions taken against physicians to a national health-care-quality clearinghouse is confidential and not to be disclosed under 42

U.S.C. § 11137(b)(1). *Id.* And in *Robertson v. Neuromedical Center*, 169 F.R.D. 80 (M.D.La.1996), the court held that a Louisiana statute providing for the confidentiality of peer review committee records did not create an evidentiary privilege under federal law in an action under the Americans With Disabilities Act. Stating that Congress, in the Health Care Quality Improvement Act of 1986, provided qualified immunity for persons providing information to a professional review body regarding the competence or professional conduct of a physician, and also established confidentiality for information reported under the Act, the court noted that the Act did not establish confidentiality for peer review records and materials from discovery and court subpoena. *Robertson, supra*, at 84. As such, the court concluded that "the absence of such a privilege in this statute is evidence that Congress did not intend these records to have the level of confidentiality and protection advanced by the hospitals and provided in the state statute." *Id.*

The cases propounded by the Hospitals in this case, such as *Bredice v. Doctors Hospital*, 50 F.R.D. 249 (D.D.C.1970), *Morse v. Gerity*, 520 F.Supp. 470 (D.Conn.1981), and *Whitman v. United States*, 108 F.R.D. 5 (D.N.H.1985), all predate the enactment of the Health Care Quality Improvement Act and the Supreme Court's holding in *University of Pennsylvania*. The Fifth Circuit decision in *In re United States*, 864 F.2d 1153 (5th Cir.1989), and the District of New Jersey case of *Wei v. Bodner*, 127 F.R.D. 91 (D.N.J.1989), finding a federal statutory peer review privilege, also predate *University of Pennsylvania*.

The Hospitals attempt to distinguish the cases cited by Plaintiffs as pertaining to a strong federal interest such as antitrust and employment discrimination, rather than a simple malpractice action under the FTCA which follows state substantive law. The FTCA requires federal courts to look to the law of the state where the act or omission occurred in order to determine government liability. 28 U.S.C. § 1346(b). This does not mean, however, that for purposes of Rule 501 "state law supplies the rule of decision" in federal tort claims. *Menses v. United States*

*Postal Service,* 942 F.Supp. 1320, 1321 (D.Nev.1996). "Where the interests of the United States are directly affected and the issue or right being adjudicated derives from a federal source, federal courts have long recognized that federal laws rather than state laws govern unless Congress otherwise provides." *Id.* (citing 19 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction §§ 4514 and 4515). As previously noted, Rule 501 of the Federal Rules of Evidence sets forth a general rule that evidentiary privileges shall be governed by principles of the common law as interpreted by the federal courts. "Whether state privilege law applies to a federal case depends on the manner in which the state law is used in the federal suit, for only if state law 'supplies the rule of decision' does the state's privilege law apply." *Menses, supra,* at 1322. Congress has recognized that "when federal courts merely adopt state law as federal law, there is no need to apply state law in matters such as the admissibility of evidence and claims of privilege, and that federal privilege law controls ... [i]t is only where state law is operative of its own force that state law supplies the rule of decision, and, under Rule 501, state privilege law governs." *Id.* Under the FTCA, in which Congress established a forum in which liability claims against the government could be pursued in accord with the local laws of the various states, the Supreme Court has held that the language of such a provision "assimilates into federal law the rules of substantive law of the several states." *Feres v. United States,* 340 U.S. 135, 142, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Thus, as federal courts only adopt state law under the FTCA, "federal law still supplies the rule of decision under Rule 501 and state privilege law does not apply to Federal Tort Claims Act cases." *Menses, supra,* at 1323–24. *See also Galarza v. United States of America,* 179 F.R.D. 291 (S.D.Cal.1998) (FTCA cases require the application of federal law as to privilege); *Young v. United States,* 149 F.R.D. 199, 202 (S.D.Cal.1993) ("the legislative history of Rule 501 supports the conclusion that Congress intended federal privilege law to apply to Federal Tort Claims Act cases"). *Contra Johns v. United States of America,* 1997 WL 695608 (E.D.La. 1997) (holding that the FTCA holding that government liable like a private individual under like circumstances and applying Louisiana privilege law without discussion); *Oslund v. United States,* 128 F.R.D. 110, 112–113 (D.Minn.1989) (applying state physician-patient privilege in FTCA case).

This is not to say that there are no peer review privileges under federal law. For example, in 38 U.S.C. § 5705, Congress declared certain medical quality assurance records to be privileged in cases involving hospitals operated by the Veterans Administration/Department of Veterans Affairs. By regulation, 38 C.F.R. § 17.501, such documents, such as "tort claims peer reviews," 38 C.F.R. § 17.501(a)(1)(ix), are defined and included in this privilege. A similar privilege exists as to Defense Department health facilities. 10 U.S.C. § 1102. These examples demonstrate that Congress is cognizant of medical peer review and the need for such information to be protected from disclosure and used as evidence. However, these legislative examples also show that, in creating the new privilege, Congress carefully limited their scope to only federally operated health facilities for stated purposes. Erie County Medical Center's reliance on *In re United States,* 864 F.2d 1153 (5th Cir.1989) is therefore misplaced. There, the court held that medical quality assurance records under 10 U.S.C. § 1102 were privileged. As noted, however, § 1102 is inapplicable to the subpoenaed non-parties as they are not health care facilities under the Department of Defense.

In summary, given the general principle that privileges are strongly disfavored in federal practice, this court is unwilling to find a privilege where "it appears that Congress had considered the competing concerns and [did] not establish a privilege." *Robertson, supra,* at 83. While state privileges may be considered in determining whether a federal privilege exists, "a privilege for peer review materials has no similar historical or statutory basis" under federal law. *University of Pennsylvania, supra,* 493 U.S. at 196, 110 S.Ct. 577. Medical peer reviews do not enjoy the historical or statutory support upon

which other privileges have been recognized in federal law, and the Hospitals have failed to provide any reason to believe some physicians would not provide candid appraisals of their peers absent the asserted privilege. *See University of Pennsylvania, supra,* at 196, 201, 110 S.Ct. 577. Whether the public interest would be served by a medical peer review privilege in federal cases requires a weighing of interests more appropriate for Congress than for the courts. Thus, the fact that such peer review privileges exist under numerous state statutes is immaterial.

Children's Hospital also argues that the subpoena places an undue burden on it as the materials requested are not specified with reasonable particularity and do not state a finite period of time. The court concludes that, while the documents sought are properly identified as peer review materials, a reasonable time period shall be from 1986 through the present, based on Dr. Turuel's 1986 felony conviction. As to Sisters Hospital's claim of physician-patient privilege under N.Y.Civ.Prac.L. & R. § 4504(a)(1), such privilege is inapplicable in federal court for the same reasons as discussed above in relation to the state peer review privilege. Finally, Erie County Medical Center's contention that the requested information concerning Dr. Turuel predates the surgery at issue and is thus irrelevant is also without merit. Under the liberal definition of relevance for federal discovery purposes, Dr. Turuel's surgical practices of an allegedly professionally inadequate nature pre-dating the surgery at issue may well lead to the discovery of admissible evidence, and therefore are relevant for the purposes of discovery in this action.

Despite its finding that the records sought by Plaintiffs are not privileged under either federal statutory or common law, the court is not unsympathetic to the concerns raised by the Hospitals regarding the peer review records. Therefore, the court directs that within ten (15) days of this Order, Plaintiffs, Defendant, and the Hospitals shall draft and enter into a confidentiality agreement with regards to the documents produced in response to Plaintiffs' subpoena. Should such an agreement not be reached, the parties shall contact the court to schedule a conference to discuss any outstanding issues. Following the execution of the confidentiality agreement, responsive documents shall be served on Plaintiffs within thirty (30) days of the date of the agreement.

### 3. *Motion to Amend the Scheduling Order*

By papers filed on May 12, 1998, Defendant moved to amend the Amended Scheduling Order entered November 7, 1997. Plaintiffs agree that the amendment is needed, but not for the time periods requested by Defendant in its motion. Upon consideration of the reasons set forth by the parties, the court finds good cause is shown to amend the Amended Scheduling Order. Accordingly, Defendant's motion is GRANTED. A Second Amended Scheduling Order will be filed contemporaneously with this Decision and Order.

### *CONCLUSION*

Based on the foregoing, Plaintiffs' motions to compel Sisters of Charity Hospital (Docket No. 15) and the Erie County Medical Center (Docket No. 18) to comply with its subpoena is GRANTED. Children's Hospital's motion to quash Plaintiffs' subpoena (Docket No. 22) is DENIED. As a genuine issue of law existed in bringing these motions, no costs and attorney's fees shall be awarded. Further, Plaintiffs' motion to compel discovery responses from Defendant (Document No. 11) is DENIED as moot, without prejudice to renewal as to any issues regarding the objections raised by Defendant. No costs, attorney's fees or sanctions shall be awarded. Defendant's motion to amend the scheduling order (Docket No. 33) is GRANTED.

SO ORDERED.