Charles **WILLIAMS**, M.D., Plaintiffs,

v.

**UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA**, et al., Defendants.

Case No. 2:09–cv–00554–PMP–PAL.

United States District Court, D. Nevada.

March 9, 2010.

---

Jacob L. Hafter, Michael K. Naethe, Law Office of Jacob Hafter & Associates, Las Vegas, NV, for Plaintiffs.

David Roger, District Attorneys Office, Amanda Brookhyser, Lisa J. Jolly, Lynn

M. Hansen, Jimmerson Hanson, Las Vegas, NV, for Defendants.

## ORDER

(Mtn to Compel—Dkt. # 44)

PEGGY A. LEEN, United States Magistrate Judge.

Before the court is Plaintiff's Motion to Compel Discovery and Request for Rule 37 Sanctions (Dkt. # 44). The initial motion to compel was filed August 14, 2009. The court conducted a hearing August 20, 2009 and extended some of the discovery plan and scheduling order deadlines and resolved certain of the parties' disputes which were the subject of the motion to compel. The court also directed counsel to meet and confer to discuss any further discovery disputes and scheduling issues and set a status conference for September 24, 2009 at 11:00 a.m., requiring the parties to submit a joint status report outlining any discovery disputes. The court conducted the status and discovery dispute resolution conference on September 29, 2009 and October 20, 2009.

The parties' respective positions with respect to their ongoing discovery disputes are articulated in Joint Status Reports (Dkt. # 59, 62) filed September 30, 2009 and October 16, 2009, respectively. The parties' remaining discovery disputes concern whether the defendants should be compelled to disclose documents and information defendants assert are covered by Nevada's medical peer review privilege. At the hearing on October 20, 2009, the court ordered counsel for defendants to submit documents withheld from production on the grounds of the medical peer review privilege to the court for *in camera* review by the close of business October 21, 2009.

## BACKGROUND

The Complaint (Dkt. # 1) in this case was filed March 23, 2009. Plaintiff was granted leave and filed a First Amended Complaint (Dkt. # 30) June 10, 2009. This case involves plaintiff Charles Williams' claims against University Medical Center ("UMC") and other defendants arising out of the revocation of plaintiff's medical staff privileges at UMC. The first amended complaint asserts claims against the defendants for: (1) violation of his Fourteenth Amendment Rights under 42 U.S.C. § 1983; (2) anti-trust violations under the Sherman Act; (3) violation of the Clayton Act; (4) tortious interference with business relationships and prospective business relations; (5) tortious interference with employment, trade, or profession; (6) negligent interference with prospective economic advantage; (7) breach of the covenant of good faith and fair dealing; (8) negligence; (9) defamation; (10) defamation *per se;* (11) libel; and (12) slander. Plaintiff seeks a judgment against the defendants withdrawing their suspension of plaintiff's medical privileges; a declaratory judgment that his privileges should not have been suspended; an order requiring the defendants to adhere to the procedures in their Bylaws, Credentialing Manual, fair hearing procedure, and other documents; monetary damages; and an award of attorneys' fees and costs.

Plaintiff served written discovery requests on the defendants which have been answered and supplemented. However, defendants have refused to produce certain documents and answer certain interrogatories on the grounds that Nevada's statutory peer review privilege, codified at N.R.S. § 49.119, protects the documents and information from disclosure. Defendants served a privileged document log on the plaintiff October 14, 2009. Plaintiff asks that the court overrule defendants' peer

review privilege objections and order: (1) defendant Ellerton to answer Interrogatory Nos. 7 and 8 to the extent a privilege is claimed; (2) the Medical Staff defendants to answer Interrogatory Nos. 12 and 13 to the extent a privilege is claimed; (3) further responses to plaintiff's Request for Production of Documents Nos. 2, 18, 27 and 32, to the extent that a privilege is claimed; (4) further responses to plaintiff's Second Request for Production Nos. 1 and 5 to the extent a privilege is claimed; and (5) further responses to plaintiff's Third Request for Production Nos. 2, 3 and 4.

The documents withheld from production on privilege grounds which were submitted to the court *in camera* consist of plaintiff's Performance Improvement File, Anesthesia Committee Minutes, Credentials Committee Meeting Minutes, Sentinel Event Reports, and Medical Executive Committee Meeting Minutes.

## DISCUSSION

Fed.R.Civ.P. 26(b) permits discovery into any matter, not privileged, that is relevant to any party's claim or defense. It is undisputed that the documents and information plaintiff seeks in his motion to compel are relevant within the meaning of Rule 26(b). Defendants resist discovery of the information and documents on the grounds Nevada's medical peer review statute protects them from compelled disclosure. Nevada's medical peer review statute, N.R.S. 49.119, provides: "A review committee has a privilege to refuse to disclose and to prevent any other person from disclosing its proceedings and records and testimony given before it." *Id.* A review committee is defined by N.R.S. 49.117. "The privilege may be claimed by any member of the review committee, any person whose work has been reviewed by the committee or any person who has offered testimony, an opinion or documentary evidence before the committee." N.R.S. 49.121(1). Plaintiff claims that pursuant to Rule 501 of the Federal Rules of Evidence, federal common law governs. Therefore, Nevada's medical peer review privilege does not apply to this federal case, and in *Agster v. Maricopa County,* 422 F.3d 836 (9th Cir.2005), the Ninth Circuit failed to recognize a federal common law peer review privilege.

Defendants concede that Rule 501 determines applicable privileges in this federal action. However, defendants assert that the Ninth Circuit's holding in *Agster* was limited to the context of that case which involved the death of a prisoner. During oral argument, counsel for defendants argued that the court should recognize and create a new federal common law peer review privilege in this case.

Rule 501 of the Federal Rules of Evidence governs the determination of whether material sought in discovery is privileged. It provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

*Id.*

█ Plaintiff's amended complaint states both federal and state claims against the defendants. In the Ninth Cir-

cuit, it is well settled that "in federal question cases with pendant state law claims, the law of privilege is governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." *Religious Technology Center v. Wollersheim,* 971 F.2d 364, 367 at n. 10 (9th Cir.1992) (refusing to apply California litigation privilege in copyright action with pendant state law claims); *Roberts v. Heim,* 123 F.R.D. 614, 620–21 (reviewing cases holding federal common law of privileges governs all privilege issues in federal question case with pendant state law claims); *see also* Advisory Committee Notes to Rule 501 (stating that state law applies only in diversity cases). "Where there are federal question claims and pendant state law claims present, the federal law of privilege applies." *Agster,* 422 F.3d at 839.

■ No case in the Ninth Circuit has recognized a federal medical peer review privilege. *Id.* However, in enacting Rule 501 in 1975, Congress authorized federal courts to define new evidentiary privileges by interpreting "the principles of the common law ... in light of reason and experience." Advisory Committee Notes to FRE 501. Rule 501 manifests a Congressional intent "not to freeze the law of privilege" but to provide federal courts with the flexibility to develop rules of privilege on a case-by-case basis. *Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). Rule 501 directs federal courts to "continue the evolutionary development of testimonial privileges." *Id.* Rule 501 "should be understood as reflecting the view that the recognition of a privilege based on a confidential relationship ... should be determined on a case-by-case basis." *Jaffee v. Redmond,* 518 U.S. 1, 9, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (*citing* S.Rep. No.

93–1277 at 13 (1974) *reprinted in* U.S. Code Cong. & Admin. News 1974 at 7051, 7059).

■ Testimonial privileges are disfavored because they deprive litigants and the public of "everyman's evidence." *Trammel,* 445 U.S. at 47, 100 S.Ct. 906. Testimonial privileges "are not lightly created or expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Federal courts should not create and apply a new privilege unless it "promotes sufficiently important interests to outweigh the need for probative evidence." *Trammel,* 445 U.S. at 51, 100 S.Ct. 906. "The Supreme Court has been especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *University of Pa. v. EEOC,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). This is because balancing conflicting interests is a legislative function. *Id.*

The Supreme Court has recognized a federal common law privilege keeping grand jury proceedings secret based on a rule of secrecy dating back to the 17th century which was imported into federal common law. *See Douglas Oil Co. of Cal. v. Petrol Stops Northwest,* 441 U.S. 211, 220 at n. 9, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). It has also recognized a well-established privilege for deliberative interagency documents in *NLRB v. Sears Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). More recently, the Supreme Court recognized a federal common law pyschotherapist privilege under Rule 501 in *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

However, the Supreme Court has refused to recognize new federal common law privileges more often than not. In

*Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Supreme Court considered and flatly rejected the creation of a reporter's privilege to refuse to disclose the identity of sources in testimony before a grand jury. The Supreme Court failed to recognize a legislative privilege barring the introduction of evidence of the legislative acts of a legislator in *United States v. Gillock,* 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980). There is no privilege barring testimony on evidence of the editorial processes of the news media. *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). In *University of Pa. v. EEOC,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), the Supreme Court refused to recognize an academic peer review privilege. No physician-patient privilege exists under federal common law. *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). "The physician-patient evidentiary privilege is unknown to the common law." *Id.* at 602 at n. 28, 97 S.Ct. 869.

■ The *Jaffee* decision established a framework for courts to consider in determining whether to recognize new federal common law privileges. In that case, a police officer shot and killed a man in the line of duty and received extensive counseling from a licensed clinical social worker. The plaintiffs in a wrongful death action sought discovery of the notes of the police officer's counseling sessions. The Supreme Court accepted *certiorari* to resolve a conflict among the Courts of Appeals concerning whether the federal courts should recognize a psychotherapist's privilege under Rule 501. *Jaffee* directed federal courts determining whether to recognize a new federal common law privilege to first consider whether recognition of a privilege "promotes sufficiently important interests to outweigh the need for probative evidence." *Id.* at 9–10, 116 S.Ct. 1923. Federal courts should consider both the individual and public interests involved in recognizing a new federal common law privilege. *Id.* at 10–12, 116 S.Ct. 1923. The courts should also consider whether there is a consensus among the States in determining whether "reason and experience" supports recognition of a privilege. *Id.* at 13, 116 S.Ct. 1923. The Supreme Court recognized a psychotherapist-patient privilege, finding the privilege was "rooted in the imperative need for confidence and trust," served important private and public interests, and that all fifty states and the District of Columbia had enacted some form of a psychotherapist's privilege. *Id.*

Nevada is one of "at least forty-six states and the District of Columbia" that has enacted laws prohibiting the disclosure of peer review material. *Weekoty v. United States,* 30 F.Supp.2d 1343, 1345–46 (D.N.M.1998). However, the vast majority of federal courts that have considered the issue have rejected creation of a federal common law medical peer review privilege. The Fourth, Seventh, and Ninth Circuit Courts of Appeal have all refused to recognize a peer review privilege. *Virmani v. Novant Health Inc.,* 259 F.3d 284 (4th Cir.2001) (refusing to recognize a privilege for medical peer review materials in an action alleging termination of a doctor's privileges because of his race and national origin); *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058 (7th Cir. 1981) (refusing to recognize a medical peer review privilege in a civil anti-trust action brought by a doctor alleging discrimination and restraint of trade for suspension of his privileges); *Agster v. Maricopa County,* 422 F.3d 836 (9th Cir.2005) (refusing to recognize a peer review privilege in a civil rights action brought by the parents and representative of the estate of a prisoner who died in custody); *see also Nilavar v. Mercy Health System–Western Ohio,* 210

F.R.D. 597 (S.D.Ohio 2002); *Johnson v. United Parcel Serv., Inc.,* 206 F.R.D. 686 (N.D.Fla.2002); *Mattice v. Memorial Hosp. of South Bend,* 203 F.R.D. 381 (N.D.Ind.2001); *Leon v. County of San Diego,* 202 F.R.D. 631 (S.D.Cal.2001); *Krolikowski v. University of Mass.,* 150 F.Supp.2d 246 (D.Mass.2001); *Tucker v. United States,* 143 F.Supp.2d 619 (S.D.W.Va.2001); *Marshall v. Spectrum Medical Group,* 198 F.R.D. 1 (D.Me.2000); *Syposs v. United States,* 179 F.R.D. 406 (W.D.N.Y.1998), adhered to upon reconsideration, 63 F.Supp.2d 301 (1999); *Holland v. Muscatine General Hosp.,* 971 F.Supp. 385 (S.D.Iowa 1997); *Price v. Howard County Gen. Hosp.,* 950 F.Supp. 141 (D.Md.1996); *Robertson v. Neuromedical Ctr.,* 169 F.R.D. 80 (M.D.La.1996); *Pagano v. Oroville Hosp.,* 145 F.R.D. 683 (E.D.Cal.1993); *LeMasters v. Christ Hosp.,* 791 F.Supp. 188 (S.D.Ohio 1991); *Quinn v. Kent Gen. Hosp., Inc.,* 617 F.Supp. 1226 (D.Del.1985); *Ott v. St. Luke Hosp. of Campbell County, Inc.,* 522 F.Supp. 706 (E.D.Ky.1981); *Robinson v. Magovern,* 83 F.R.D. 79 (W.D.Pa.1979).

In *Agster,* the Ninth Circuit declined to recognize a peer review privilege in an action brought by the parents and representatives of the estate of a prisoner who died in the custody of the Maricopa County Jail while placed in a restraint chair. The plaintiffs brought the action in state court, and the defendants removed it to federal district court. Prior to trial, plaintiffs sought discovery of a mortality review conducted by Correctional Health Services which was privileged under Arizona law. The trial court ordered production of the mortality review, finding no federal peer review privilege had been adopted in the Ninth Circuit. The Ninth Circuit affirmed, refusing to recognize a federal peer review privilege for two reasons, one general and the other particular to the case. First, relying on the Supreme Court's decision in *University of Pa. v. EEOC,* the Ninth Circuit recognized that a court should be "especially reluctant to recognize a privilege in an area where it appears Congress has considered the relevant competing concerns but has not provided the privilege itself." *Id.* at 839 (*quoting University of Pa. v. EEOC,* 493 U.S. at 189, 110 S.Ct. 577). The Ninth Circuit found that "Congress had twice had occasion and opportunity to consider a peer review privilege" in enacting the Health Care Quality Improvement Act of 1986. *Id.* Because Congress had not granted a peer review privilege either explicitly or by implication, the Ninth Circuit declined to do so. Additionally, the Ninth Circuit declined to recognize a medical peer review privilege in the case before it, finding it particularly important that the public have access to the assessment by peers of the care provided in a case involving an inmate who died in custody.

■ With these principles in mind, the court declines the defendants' invitation to create a new privilege against the disclosure of medical peer review materials. The Supreme Court refused to recognize an academic peer review privilege in *University of Pa. v. EEOC,* finding it had no historical basis in the common law of federal courts. 493 U.S. at 189, 110 S.Ct. 577. The vast majority of federal courts that have considered whether to adopt a medical peer review privilege have declined to do so. The Ninth Circuit refused to recognize a medical peer review privilege, finding Congress had twice had the opportunity to consider the relevant competing interests but did not recognize the privilege. Defendants have not established that any public or private benefit from keeping peer review information or documents confidential outweighs the public benefit that flows from full disclosure of all

relevant information needed to ascertain the truth of what occurred in this case.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion to Compel (Dkt. # 44) is GRANTED with respect to the peer review privilege disputes discussed in this Order.

2. Defendants shall produce the documents withheld from production on the basis of the medical peer review privilege and supplement any interrogatory answers for which any information has been withheld on the basis of peer review privilege **within ten days** of entry of this order.

3. Plaintiff's request for sanctions is DENIED.