Anita PATT, M.D., Plaintiff,

v.

FAMILY HEALTH SYSTEMS, INC., and Family Health Plan Cooperative, Defendants.

No. Civ.A. 98–C–1172.

United States District Court, E.D. Wisconsin.

Nov. 10, 1999.

Paul R. Erickson & Peter W. McCombs, Gutglass, Erickson & Bonville, Milwaukee, WI, for plaintiff.

Samuel J. Leib, Leib & Katt, Milwaukee, WI, for defendant.

### DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' AND THIRD-PARTY INTERVENOR KENNETH SCHER, M.D.'S MOTION FOR A PROTECTIVE ORDER

REYNOLDS, District Judge.

■ Plaintiff Anita Patt, M.D. ("Patt"), has brought this action alleging employment discrimination against defendants Family Health Systems, Inc., and Family Health Plan Cooperative (hereinafter collectively referred to as "Family Health Plan"). Patt asserts gender-based disparate treatment, hostile work environment, and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq.[1] This court has jurisdiction over this action as it involves a federal question, 28 U.S.C. § 1331. Before the court is Family Health Plan's motion for a protective order.

Kenneth Scher, M.D. ("Scher") has requested to join as a third-party intervener in defendants' Motion for Protective Order Precluding Discovery as to Confidential Nonparty Personnel Matters, pursuant to Fed. R.Civ.P. 26(c). The court grants Scher's request to intervene. Also, the court grants in part and denies in part Family Health Plan and Scher's motion for a protective order.

## BACKGROUND

On August 2, 1993, Patt joined Family Health Plan as a general surgeon in their vascular and general surgery department. Patt was the only woman in the group. The other members of the group were Kenneth Scher ("Scher"), chief of the department when Patt joined to March 1997, Fred Steele, Greg Rosner, and Allan Converse ("Converse"), chief of the department since March 1997. Patt alleges that from January 1, 1996, and continuing to the present, she has experienced gender discrimination, primarily from Scher. Patt lists some eleven separate incidents which, in totum, allegedly constitute gender-based disparate treatment and a hostile work environment.[2] Patt also contends

---

1. Patt has also alleged in various papers that she experienced religious discrimination. (*See* Sept. 1, 1999 McCombs Aff., Ex. A.) The court, however, will not examine this allegation as it is not properly before the court. Patt's EEOC complaint only indicated charges of sex discrimination and retaliation, but not religion. (Pl.'s Nov. 30, 1999 Compl., Ex. A.) "As we have clearly stated on numerous past occasions, 'allegations that are not contained in an EEOC charge cannot be contained in a subsequent complaint filed in the district court.'" *Oates v. Discovery Zone,* 116 F.3d 1161, 1168 (7th Cir.1997) (citations omitted).

2. Patt's allegations are:

 a. Plaintiff's male colleagues were asked for a list of procedures in which they had assisted plaintiff; said information was later used to attack the plaintiff's competencies;

 b. The administrative secretary of Family Health Plan was asked to review plaintiff's surgery schedule book for gaps; plaintiff was later accused of dishonesty and taking time off without permission;

 c. Plaintiff was assigned to less complex work, and was later accused of not doing enough complex work;

that Family Health Plan threatened to impose further disciplinary measures against Patt if she filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Patt did file a complaint alleging gender discrimination and retaliation with the EEOC and on April 13, 1998, received a notice of right to sue.

Family Health Plan raises affirmative defenses. Family Health Plan contends that its review and treatment of Patt were based upon legitimate, non-discriminatory reasons. Also, Family Health Plan asserts that it took immediate, remedial action once it was informed about Patt's alleged harassment by Scher.

During the course of discovery, Family Health Plan's counsel disclosed documents from Patt's personnel file including memos critical of Patt's professional demeanor and patient care, and files of Patt's cases submitted for peer review. On August 5, 1999, Patt's counsel deposed Converse. Patt's counsel inquired about reviews of other surgical group members, Converse, Scher, Steele and Rosner (hereinafter "Male Surgical Group Members"), who are non-parties to the instant action. (Aug. 5, 1999 Converse Dep. ("Converse Dep.") at 25.) Family Health Plan's counsel advised Converse not to mention the names of doctors involved or the nature of the review[3].

Patt's counsel also questioned Converse about five other matters. Family Health Plan's counsel instructed Converse to refuse

to answer the questions because such material was privileged and not discoverable.[4] Those five matters were:

- Converse's memos to Family Health Plan's human resource director about Scher written before 1999. (Converse Dep. at 60.)
- Converse's attempts to get "Dr. Scher under control." (Converse Dep. at 105.)
- Remedial actions taken by Converse in response to Patt's allegations of gender discrimination. (Converse Dep. at 108.)
- Converse's alleged order to Scher to undergo psychological evaluation and restrictions on Scher's practice. (Converse Dep. at 123.)
- Salaries of the surgical group members. (Converse Dep. at 149.)

### DISCUSSION

Currently before the court is Family Health Plan's motion for a protective order to prevent disclosure of personnel information of the Male Surgical Group Members. In particular, Family Health Plan seeks to preclude deposition questions and other discovery in four areas.

- matters of peer review/quality assurance involving the Male Surgical Group Members.
- employer evaluations of the Male Surgical Group Members.
- disciplinary measures instituted against the Male Surgical Group Members.

d. Plaintiff was assigned to do less work, and was later accused of not working hard;
e. Plaintiff requested and received approval for time off to observe religious holidays, and was later accused of not requesting the time off;
f. Plaintiff's requests for payments for overtime hours have been unjustifiably challenged;
g. Defendants have issued memoranda that misrepresented events, provided false information and presented plaintiff in a negative light;
h. Plaintiff was falsely accused of failing to respond to a request for service;
i. Plaintiff was falsely accused in public of being "useless," "incompetent," and a "liar;"
j. Family Health Plan and/or Scher requested that plaintiff's male colleagues provide negative comments regarding the plaintiff; and
k. Plaintiff was falsely accused of refusing to operate on a patient. . . .

(Pl.'s Nov. 30, 1998 Compl. ¶¶ 4–5.)
Patt also contends that numerous other incidents, similar to the enumerated allegations, also occurred, and she intends to testify to those incidents at trial.

3. The parties at times conflate peer review and consultation. The court defines "peer review" as those formal evaluations and critiques of a physician's conduct after a procedure has been completed.

4. Converse has not retained Family Health Plan's counsel as his own. Therefore, Family Health Plan's counsel's assertion of a privilege on behalf of Converse is improper. Family Health Plan's counsel also failed to assert a specific privilege but merely thought there was a federal law that protected the information. (Converse Dep. at 61.)

• information concerning health care treatment and/or psychological counseling obtained by or provided to any of the Male Surgical Group Members.

Scher, as a third-party intervenor, joins Family Health Plan's motion.

Family Health Plan and Scher argue that the documents pertaining to the Male Surgical Group Members requested by Patt are privileged and non-discoverable pursuant to Wis.Stat. § 146.38 ("Peer Review Statute")[5]. Patt contends that the Peer Review Statutes must be narrowly construed and that the balancing of interests calls for disclosure of the requested documents.

The court will first address the protection of the Male Surgical Group Members' reviews, evaluations, and discipline. Family Health Plan asserts a privilege under the Peer Review Statute for those concerns. Next, the court will examine the protection of any Male Surgical Group Members' psychiatric records and patient names on medical records, as Family Health Plan and Scher assert a different privilege, physician-patient, to preclude discovery.

A. *Protection of matters of peer review/quality assurance involving the Male Surgical Group Members; employer evaluations of the Male Surgical Group Members; and disciplinary measures instituted against any of the Male Surgical Group Members.*

 Rule 26(c) of the Federal Rules of Civil Procedure allows the court, where good cause has been shown, to issue a protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[6] As an initial matter, the court must make an independent determination of the existence of good cause for the protective order. *Citizens First Nat'l Bank v. Cincinnati Ins. Co.,* 178 F.3d 943, 944 (7th Cir.

1999). The movant bears the burden of showing good cause, and such burden must be satisfied with "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause." 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2035 (2d ed.1994). General injuries are insufficient. Rather, it must be shown that disclosure will cause a clearly defined and serious injury. *Glenmede Trust Co. v. Thompson,* 56 F.3d 476 (3rd Cir.1995).

To satisfy its burden of showing good cause, Family Health Plan contends that the Male Surgical Group Members have a privacy interest in their reviews and evaluations that trumps Patt's need for discovery of those matters. Family Health Plan also contends that the Peer Review Statute prevents discovery on those matters. Each contention will be discussed in turn.

### 1) *Privacy Interests of the Male Surgical Group Members*

 Family Health Plan argues that the privacy interests of the Male Surgical Group Members as to their personnel files outweigh Patt's need for the information. In its independent assessment of good cause, the court must balance all the factors involved, but the litigants' interests must be given priority. Family Health Plan does not assert a privacy interest of its own in the personnel files of the Male Surgical Group Members. In comparison, Patt argues that discovery of the personnel files are necessary to evaluate Family Health Plan's affirmative defenses.

 Family Health Plan describes Patt's request for discovery of the personnel files as "a fishing trip into collateral matters." (Defs.' Aug. 19, 1999 Br. at 4.) However, a claim of gender-based disparate treatment requires a showing that Patt was treated differently from her male peers in the surgi-

---

5. Family Health Plan also contends that Wis. Stat. § 146.37 also supports its claim of privilege; however, that provision gives civil immunity for *persons* involved in the review or evaluation of health care providers. As Family Health Plan is not a person, it cannot assert the privilege. Furthermore, it cannot assert a privilege on behalf of third-parties. *See* infra Discussion (A)(2).

6. The motion for protective order must also be accompanied by a certification "that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R.Civ.P. 26(c). Family Health Plan did not provide such a certification. However, for judicial expediency, the court addresses the substance of the motion.

cal group. See *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373 (7th Cir.1998). Patt contends that over-scrupulous examination of her surgical performance constitutes part of her disparate treatment. The discovery of other surgical group members' files is relevant in that such information will help determine if Patt's treatment differed from the male members of the surgical group. Also, the discovery will provide insight into whether critiques of Patt's performance were based on non-discriminatory justifications, as claimed by Family Health Plan. Hence, the discovery of the personnel files does not stray from a claim and defense central to the action.

Finally, Family Health Plan also fails to meet the specificity requirement for a showing of good cause. Without any indication of a clearly defined and serious injury, the court is unwilling to issue a protective order for general or merely speculative damage.

### 2) *Asserting of Privilege Under Wisconsin's Peer Review Statute*

■ As another means of showing good cause for a protective order, Family Health Plan contends that the information being sought by Patt is privileged under Wisconsin's Peer Review Statute[7], without a discussion of the applicability of state privilege law in the instant case. However, the court must initially address the choice-of-law issue regarding privilege before it can continue its discussion of the requested protective order.

■ Federal Rule of Evidence 501 governs the choice of law regarding privileges. It states, "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Federal courts, therefore, will apply state laws regarding privilege only when state law supplies the rule of decision, as in diversity actions. The instant action comes before the court pursuant to Title VII. Thus, federal law controls matters of privilege, and federal common law does not recognize a peer review privilege. *Memorial Hosp. v. Shadur*, 664 F.2d 1058 (7th Cir.1981).

The court, however, can consider the Peer Review Statute and determine whether that

---

7. Family Health Plan requests protection over materials and testimony concerning peer review, employee evaluations, and disciplinary measures; such areas are regulated by the Peer Review Statute, but only in part. No party cites to a leading case interpreting the Peer Review Statute. In *Franzen v. Children's Hosp.*, 169 Wis.2d 366, 485 N.W.2d 603 (Ct.App.1992), the Wisconsin Court of Appeals laid out a framework to apply in determining whether certain discovery matters fall within the privilege guaranteed by the Peer Review Statute.

This holding requires that the trial court make three distinct findings of fact:
> (1) identify those individuals preparing a record in order to determine if they are either evaluators or members of an organization "reviewing or evaluating services,"
> (2) determine if a record pertains to an investigation, inquiry, proceeding or conclusion of the evaluator or organization identified in step one,
> (3) determine if a record was *presented* to the evaluator/organization or *was kept by* the evaluator/organization.

*Franzen*, 169 Wis.2d at 381–82, 485 N.W.2d at 608–09 (emphasis in original).

Only organization members that are reviewing or evaluating can assert a privilege not to testify about matters learned during the review or evaluation process. The statutory definitions narrowly limit "the term 'evaluator' to particular individuals with administrative rank and defined functions and limited the term 'organization' to legally defined entities." *Id.* at 380, 485 N.W.2d at 607. Furthermore, a participant in the review process can testify as to matters within his personal knowledge. *Id.*

The Peer Review Statute does not provide a blanket privilege for all records created by evaluators or reviewers.
> [T]he plain language of [§ 146.38(2) ] creates three distinct categories of materials: (1) a "record of [ ] investigations, inquiries, proceedings and conclusions," (2) "information, documents or records presented during the review," and (3) "matters within [a person's] knowledge." Materials in the first category are expressly protected from the discovery process. Materials in the second category are not protected by this subsection. Materials in the third categories are expressly made available in "any civil action."

*Franzen* at 377–78, 485 N.W.2d at 607. Thus, materials created by the reviewer or evaluator are privileged. However, records that were merely presented (i.e. produced) for the review or evaluation can be discoverable. *Id.* Thus even if the court were to apply Wisconsin law, the court cannot grant a blanket privilege over all the matters as requested by Family Health Plan.

privilege should be recognized under federal law. "A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Memorial Hospital*, 664 F.2d at 1061 (7th Cir.1981) (citing *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y.1976)). In this case, the court must determine whether the Peer Review Statute should be adopted into the federal common law.

■■■ Two principles guide the court's decision on the issue of affording comity to the Peer Review Statute. "First because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed.... Second ... it is important to take into account the particular factual circumstances of the case in which the issue arises." *Id.* (citations omitted). Therefore, the court needs to balance "the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Id.* at 1061–62 (citing *Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 543 (7th Cir.1977)).

The court is persuaded by case law concerning the adoption of other states' peer review statutes into federal common law. The majority of courts have found that comity should not be afforded to such statutes. See *Johnson v. Nyack Hosp.*, 169 F.R.D. 550 (S.D.N.Y.1996) (race discrimination action under 42 U.S.C. §§ 1981, 1985); *Robertson v. Neuromedical Cntr.*, 169 F.R.D. 80 (M.D.La. 1996) (ADA claim) [8].

Legislative history indicates that Congress addressed the creation of a federal privilege of peer review documents and ultimately rejected the proposal. In 1986, Congress passed the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101, et seq. ("HCQIA") that gave qualified immunity to certain participants in medical peer review.

> [The HCQIA] also established confidentiality for information reported under the act, but did not establish confidentiality for peer review records or protect peer review records and materials from discovery and court subpoena. The absence of such a privilege in this statute is evidence that Congress did not intend these records to have the level of confidentiality and protection ... provided in the state statute.

*Robertson*, 169 F.R.D. at 84.

■ The court finds that the interests against the recognition of a federal peer review privilege outweigh the interests in favor of such protection. "[T]he HCQIA specifically denies immunity under the Civil Rights Act for participants in the peer review proceedings, showing that Congress accorded more weight to vindication of civil rights than to the interests in the confidentiality of the peer review process." *Johnson*, 169 F.R.D. at 560–61.

Congress' high value of the "vindication of civil rights" has been echoed by the Supreme Court. In *University of Pennsylvania v. Equal Employment Opportunity Comm'n*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) ("*U. Penn*"), the Supreme Court rejected the notion of a federal peer review privilege in the context of university tenure evaluations. The court declines to interpret the Supreme Court's holding in *U. Penn* to imply that a medical peer review privilege should also be rejected. Nevertheless, the *U. Penn* decision teaches that

> confidentiality is important to the proper functioning of the peer review process in academic institutions. But the [Supreme Court] noted that this was only one factor. Another is Congress' recognition of the substantial costs of racial and sexual discrimination in higher education. The

---

**8.** *See also Syposs v. U.S.*, 63 F.Supp.2d 301 (W.D.N.Y.1999) (medical malpractice action under the Federal Tort Claims Act); *Burrows v. Redbud Community Hosp. Dist.*, 187 F.R.D. 606 (N.D.Cal.1998) (medical malpractice action under the Emergency Medical Treatment and Active Labor Act); *Price v. Howard County Gen. Hosp.*, 950 F.Supp. 141 (D.Md.1996) (Sherman Act claim).

Court recognized this as a great, if not compelling, governmental interest.

*Robertson,* 169 F.R.D. at 83.

The court recognizes that confidentiality of medical peer review is important to facilitate the valuable, free exchange of opinions and criticisms that can only help in the delivery of quality medical care. However, Congressional intent, as evidenced in the legislative history to the HCQIA, has shown that the need for such confidentiality is outweighed by the interest in providing individuals with the means to vindicate their civil rights. Thus, in following the Supreme Court's calculus, the court will not adopt Wisconsin's Peer Review Statute into federal common law.

Therefore, for the remainder of discovery in the instant action, a party asserting a privilege must cite a specific privilege grounded in the federal common law. If a privilege is disputed, the party asserting the privilege shall produce an inventory of documents over which the asserting party claims a privilege. "[T]he party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). Should the parties fail to resolve issues of privilege after abiding by Fed.R.Civ.P. 26(b)(5), the court, upon a motion by either party, will conduct an in camera inspection of the documents in question and rule on their discoverability.

B. *Scher's Personal Health Care Records*

■ Family Health Plan cannot assert a privilege on behalf of the Male Surgical Group members. "A party may not ask for an order to protect the rights of another party or a witness if that party or witness does not claim protection for himself...." 8 Wright & Miller, *supra* § 2035. However, Scher has requested to intervene on this matter alone and has submitted his own brief in support of the motion for protective order. Scher's brief reiterates Family Health Plan's arguments for a protective order, which have been sufficiently addressed by the court.

■ Scher also claims a privilege for his personal health care records and relies upon Wisconsin law requiring the confidentiality of patient records. Once again, the source of the privilege must be federal common law. Scher claims that his personal health care records are protected under a physician-patient privilege, but the federal common law does not recognize a general physician-patient privilege. *Patterson v. Caterpillar, Inc.,* 70 F.3d 503 (7th Cir.1995). Alternatively, a psychotherapist-patient privilege does exist in the federal common law. *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). Therefore, the court will grant Scher's motion for a protective order for Scher's psychological records which are privileged under the psychotherapist-patient privilege.

■ However, the court holds that any material regarding Scher's psychological treatment contained in Scher's employee file held by Family Health Plan are not personal health care records, do not fall under the psychotherapist-patient privilege, and are discoverable. For example, in Converse's deposition, Patt's counsel asked if Converse ordered Scher to undergo psychological evaluation, but Converse asserted a privilege and refused to respond. (Converse Dep. at 123.) However, Converse's actions are not part of Scher's personal medical records; they are not privileged and are discoverable.

C. *Patient's Names*

The court does find that the privacy of the patient's names outweigh any need for their disclosure in this action. Therefore, the court will order all the names of patients treated by the surgical group redacted from any discoverable material.

**CONCLUSION**

Third-party Kenneth Scher, M.D.'s request to intervene in defendants Family Health Systems, Inc., and Family Health Plan Cooperative's motion for protective order is **GRANTED.**

Defendants Family Health Systems, Inc., Family Health Plan Cooperative, and third-

party Kenneth Scher, M.D.'s motion for protective order is **GRANTED IN PART** and **DENIED IN PART.**

The motion for protective order is **GRANTED** with respect to third-party Kenneth Scher's psychological health care records and is **DENIED** in all other respects.

Should one of the parties to this action assert a specific privilege over discovery materials, the asserting party shall produce an inventory of the allegedly privileged material to the other parties, in accordance with Fed. R.Civ.P. 26(b)(5).

The inventory will include the following information for each document for which a privilege is asserted preventing its discovery:

- the author of the document
- the date the document was created
- the recipient(s) of the document
- the subject of the document
- the specific privilege protecting the document from discovery

This list is not meant to be exclusive. Any other information that would enable the other parties to assess the applicability of the privilege must also be provided.

Should the parties continue to dispute the discoverability of material after the production of an inventory list, the court, upon motion by either party, will conduct an in camera inspection of the material in question and rule on its discoverability.

All names of patients treated by the vascular and general surgery group of Family Health Systems, Inc., will be **REDACTED** from discoverable documents.