Peter G. MARSHALL, M.D., Plaintiff,

v.

**SPECTRUM MEDICAL GROUP,**
Defendant.

No. Civ. 00–155–B–C.

United States District Court,
D. Maine.

Dec. 8, 2000.

Michael A. Duddy, Kelly, Remmel & Zimmerman, Portland, ME, for Peter G. Marshall, M.D.

Richard G. Moon, Melinda J. Caterine, Moon, Moss, McGill & Bachelder, P.A., Philip M. Coffin, III, Thomas V. Laprade, Lambert, Coffin, Rudman & Hochman, Portland, ME, for Spectrum Medical Group, P.A., John T. Frankland, Richard J. Smith and David J. Kliewer, M.D.

Christopher D. Nyhan, Robert O. Newton, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for Eastern Maine Medical Center.

Christina Hall, Assistant Attorney General, Augusta, ME, for State of Maine.

### ORDER

KRAVCHUK, United States Magistrate Judge.

This matter is before the Court on Eastern Maine Medical Center's ("EMMC's") objec-

tion to a document request served upon it by Plaintiff Peter Marshall, M.D. The case involves a claim by Marshall against his former employer, Spectrum Medical Group ("Spectrum"), and certain shareholders and employees of Spectrum. EMMC is not a party to the underlying action. Based upon my review, I now **DENY** EMMC's request for relief and **ORDER** that Dr. William Sullivan comply with the witness and document subpoenas served upon him, subject to certain limitations contained herein.

### Background

The Complaint alleges that Defendants inappropriately terminated Marshall's employment and have taken other actions to prevent Marshall from practicing as an anesthesiologist in Bangor. Marshall asserts eight claims for relief, including a claim under the ADA and seven state law claims, some of which are based upon the employment contract between Marshall and Spectrum.

Marshall seeks to discover from EMMC his credentialing file and to elicit testimony concerning use of the peer review process against him in support of his claims against Spectrum. Marshall maintains that representatives of Spectrum abused the credentialing process by using it to cast doubt on Marshall's mental and emotional stability, thereby impairing his ability to practice in the Bangor community. Defendant Spectrum joins with Marshall in requesting that the Court order Sullivan to comply with the subpoenas, but suggests that the court should fashion an appropriate protective order if disclosure is ordered. William Sullivan, M.D., Vice President Medical Affairs, has resisted the document and witness subpoenas served upon him and EMMC, claiming that the matters sought are privileged pursuant to 24 M.R.S.A. § 2510-A, the Maine Health Security Act; 32 M.R.S.A. § 3296, the Board of Medicine's authorizing statute; and 42 U.S.C. §§ 11131-11133, the Health Care Quality Improvement Act.

The materials submitted by Marshall suggest that a Dr. Voss discussed the materials in the disputed file with Dr. Sullivan in June, 1999. Marshall employed Dr. Voss as his consulting psychiatrist. Marshall engaged Voss to perform a psychiatric evaluation and in the course of that evaluation Voss apparently spoke at length with Sullivan. After Voss, with Marshall's authorization, provided his completed report to EMMC, Sullivan again contacted Voss directly to ask him certain questions based upon the contents of the credentialing file. According to Defendants, Marshall "has already viewed the contents of his professional competence records." Their submissions do not explain how that occurred or under what circumstances Marshall became privy to the contents of the file. In the event I do not order disclosure, Defendants request that I enter an order barring Marshall from discussing the contents of the file with anyone, including his attorneys and expert witnesses.

### Discussion

EMMC claims that its credentialing file relating to Marshall is confidential and privileged under two state and one federal statute and, therefore, need not be disclosed. The first issue I must address relates to the applicability of state privilege law to this proceeding. Assertions of privilege in federal question cases in federal court are governed by federal law. *See* Fed.R.Evid. 501. However, by its terms, Rule 501 does not prohibit the application of state privilege law in federal actions. EMMC further asserts federal privilege law is not even applicable to this case because Rule 501 directs that federal courts should look to state privilege law in civil actions where state substantive law supplies the rule of decision for the claim or defense. EMMC recognizes that Plaintiff asserts both state and federal claims in his Complaint, but argues that the state law issues predominate over the federal issues, presumably based upon the number of counts.

As a preliminary matter, I am satisfied that the asserted privilege here is relevant to both the state and federal claims. In that situation federal courts have consistently ruled that privileges are govern by federal law, not state law. *See Green v. Fulton*, 157 F.R.D. 136, 139 (D.Me.1994) (citation omitted). The merits of Plaintiff's termination from employment will be at the heart of his ADA claim just as they will be at the heart of

his state law claims. The federal interest in preventing unlawful employment discrimination under the ADA is a significant federal interest. State law issues do not necessarily predominate in this case. I therefore conclude that EMMC's claim of privilege will be governed by either federal statutory law or federal common law as it has developed under Rule 501.

### A. Federal Statutory Law

EMMC points to the Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. §§ 11101–11145, as providing for the confidentiality of professional peer review committees. EMMC cites § 11137(b)(1) which reads:

(b) Confidentiality of information

(1) In general

Information reported under this subchapter is considered confidential and shall not be disclosed (other than to the physician or practitioner involved) except with respect to professional review activity, as necessary to carry out subsections (b) and (c) of section 11135 of this title (as specified in regulations by the Secretary), or in accordance with regulations of the Secretary promulgated pursuant to subsection (a) of this section. Nothing in this subsection shall prevent the disclosure of such information by a party which is otherwise authorized, under applicable State law, to make such disclosure. Information reported under this subchapter that is in a form that does not permit the identification of any particular health care entity, physician, other health care practitioner, or patient shall not be considered confidential. The Secretary (or the agency designated under section 11134(b) of this title), on application by any person, shall prepare such information in such form and shall disclose such information in such form.

EMMC directs the Court's attention to the provision in the statute that reads, "[i]nformation reported under this subchapter is considered confidential and shall not be disclosed" as support for its position that Congress intended to create a peer review privilege.

While HCQIA finds "an overriding need to provide incentive and protection for physicians engaging in effective professional peer review," 42 U.S.C. § 11101(5), HCQIA extends that protection to only two areas. First, the HCQIA provides qualified immunity to those who participate in the peer review process. *See* 42 U.S.C. § 11111(a)(1). Second, the HCQIA requires that various groups including insurance companies, medical examiners and health care facilities report actions taken against physicians to a national clearinghouse or repository. *See* 42 U.S.C. §§ 11131–11133. The information reported to the national clearinghouse or repository, *not the information gathered during the peer review process,* is confidential and privileged. *See Syposs v. United States,* 179 F.R.D. 406, 410 (W.D.N.Y.1998) (finding that 11137(b)(1) only protects from discovery that information reported to the national clearinghouse or repository); *Bennett v. Fieser,* No. 93–1004–MLB, 1993 WL 566202, at *3 (D.Kan. Oct. 26, 1993) ("Section 11137(b) is not a general peer review privilege, but provides for the confidentiality of only that information provided to the national repository pursuant to the Act."); *Teasdale v. Marin Gen. Hosp.,* 138 F.R.D. 691, 693 (N.D.Cal.1991) ("Congress spoke loudly with its silence in not including a privilege against discovery of peer review materials in the HCQIA."); Susan O. Scheutzow, *State Medical Peer Review: High Cost But No Benefit: Is it Time for a Change?,* 25 AM.J.L. & MED. 7, 9–10 (1999) ("HCQIA provides immunity for peer review participants, but does not grant a federal evidentiary privilege to the records and deliberations of the peer review process."). Based upon the plain wording of the statute and the authority cited above, I am satisfied that 42 U.S.C. § 11137(b)(1) protects only that information reported to the national clearinghouse. Accordingly, EMMC is unable to assert a federal evidentiary privilege regarding the discovery subpoenas under HCQIA.

### B. State Statutory Law and Federal Common Law

When applying Rule 501, this Circuit uses a two-part test to determine whether to recognize an evidentiary privilege. First, I

must determine whether Maine would recognize the privilege asserted by EMMC. *See In re Hampers*, 651 F.2d 19, 22 (1st Cir. 1981). If I determine that Maine does recognize the privilege, I must then determine whether the privilege is "intrinsically meritorious." *Id.* The first prong is fairly easy to determine, despite Plaintiff's protestations to the contrary. Although Plaintiff argues that the privilege recognized by 32 M.R.S.A. § 3296 is not applicable to this case, he does acknowledge that the confidentiality and privilege provisions found at 24 M.R.S.A. § 2510–A(2) are applicable to the material he seeks from EMMC.[1]

■ However, it is Plaintiff's position that he does not fall within § 2510–A(2) because EMMC has waived the confidentiality provision through its disclosure to Dr. Voss. I agree with EMMC that Section 2510–B, which allows the hospital to furnish certain information without waiving the privilege, "expressly contemplates the situation herein." The exchange between Dr. Voss and Dr. Sullivan was part and parcel of the peer review process and does not trigger the waiver provision. Thus, I conclude that state statutory law would recognize these materials as confidential and privileged.[2] However, the matter does not end there because I must also determine whether the privilege is "intrinsically meritorious." There is no question but that there are significant policy considerations behind the adoption of the Maine statutory provisions and that this Court should order disclosure only under narrowly tailored circumstances.

When deciding whether the privilege is intrinsically meritorious this Court must consider "Wigmore's classic utilitarian formulation"[3]:

(i) whether the communications "originate in a confidence that they will not be disclosed";

(ii) whether this element of confidentiality is "essential to the full and satisfactory maintenance of the relations between the parties";

(iii) whether the relationship is a vital one that "ought to be sedulously fostered"; or

(iv) whether "the injury that would inure to the relation by the disclosure of the communications [would be] greater than the benefit thereby gained for the correct disposal of litigation."

*See Hampers*, 651 F.2d at 22–23 (quoting 8 J. WIGMORE, EVIDENCE § 2285, at 527 (McNaughton rev.1961)).

■ These factors need not be applied in order. *See Smith v. Alice Peck Day Memorial Hosp.*, 148 F.R.D. 51, 56 (D.N.H.1993). Further, if the Court answers in favor of the party seeking disclosure on any one of these factors, then the privilege does not apply. *See id.* Applying the fourth element above to this matter, I conclude that the information requested is not privileged from disclosure. The Court in *Smith* reached the same conclusion when considering the analogous, though different, New Hampshire statute in the context of a dispute similar to this one.

When applying this fourth element, courts have basically balanced the interest served by the state privilege against the federal interest in favor of disclosure. *See Hampers*, 651 F.2d at 22; *Smith*, 148 F.R.D. at 56. Federal courts are evenly split over whether a medical peer review privilege exists under federal common law. Several have found that the federal interest in disclosure is too strong to recognize such a privilege, while others see the need for such a privilege to exist. *Compare Burrows v. Redbud Com-*

---

1. I have previously recognized the "non-discoverability" portion of this provision when state law supplies the sole rule of decision in a particular case. *See Brandt v. U.S. Dep't. of Veterans Affairs*, Civil No. 99–197–B, 2000 WL 1879806 (2000). This case, unlike *Brandt*, contains at least one claim that looks to federal substantive law.

2. The Maine Law Court has not addressed the scope of this evidentiary privilege, but the trial courts in Maine have recognized the broad scope of the "nondiscoverability" provision. State Superior Court Justices Studstrup and Perkins have held that the type of documents sought by the plaintiff herein are protected from disclosure. *See Ouellette v. Wright, M.D.*, CV–96–521 (Me.Super.Ct., York Cty., April 8, 1999) (Perkins, J.); *Powell v. Mid–Maine Medical Center*, CV–96–203 (Me.Super.Ct., Kenn.Cty., Sept. 16, 1999) (Studstrup, J.).

3. *ACLU v. Finch*, 638 F.2d 1336, 1344 (5th Cir. 1981).

*munity Hosp. Dist.,* 187 F.R.D. 606, 611–12 (N.D.Cal.1998) (finding that no federal peer review privilege applies in EMTALA action); *Syposs,* 179 F.R.D. at 411–12 ("Medical peer reviews do not enjoy the historical or statutory support upon which other privileges have been recognized in federal law, and the Hospitals have failed to provide any reason to believe some physicians would not provide candid appraisals of their peers absent the asserted privilege."); *Johnson v. Nyack Hosp.,* 169 F.R.D. 550, 560–61 (S.D.N.Y.1996) (finding no federal peer review privilege exists.); *with Weekoty v. United States,* 30 F.Supp.2d 1343, 1346–47 (D.N.M.1998) (finding that federal law recognizes medical peer review privilege); *Whitman v. United States,* 108 F.R.D. 5, 7 (D.N.H.1985) (finding that "federal law now recognizes a privilege protecting hospital peer review records from disclosure").

In my mind, there are two decisive reasons to compel disclosure in this case and not recognize any federal peer review privilege: (1) the nature of the dispute and (2) the fact that Plaintiff's consulting psychiatrist and perhaps even Plaintiff himself has already learned about some or all of the information contained within the file. This case is not directly about the quality of patient care; it is a suit which alleges abuse of the peer review process.[4] The articulated justification for confidentiality in medical peer review matters is that patient care will suffer if a physician's candid comments are subsequently used in malpractice or other cases to form a basis of liability. Defendants, the apparent authors of some of the allegedly disparaging comments about Plaintiff found in the file, do not argue that these concerns are applicable.

I also note that, although not the original proponent of the subpoena, Defendants themselves have a compelling argument in favor of disclosure. Apparently, Plaintiff and/or his consulting psychiatrist have been privy to the information in the file. In terms of the "correct disposal" of the pending litigation, Defendants should have access to the same information. As they suggest, an ap-

propriate protective order can be fashioned to protect the confidentially of individuals not a party to this lawsuit. However, I am not persuaded that the protective order need go as far as Defendants suggest in order to protect EMMC's legitimate policy concerns.

### Conclusion

Based upon the foregoing, Third–Party EMMC's objection to the document and witness subpoena served upon William Sullivan, M.D., V.P. Medical Affairs, is **OVERRULED** and the Third–Party is hereby **ORDERED** to comply with those subpoenas subject to the following limitations:

(1) That the identifying information, such as the specific name of any individual, physician or health care practitioner submitting or discussing such information, be redacted, except for the names of the Defendants;

(2) That the specific identifying information be replaced with a reference to whether the party was a physician employed by Spectrum, a non-physician employed by Spectrum, or a physician or non-physician employed by some other entity, including EMMC, without revealing the identity of that other entity. Provided, however, that if one of the named Defendants is the individual so designated, the name of that party shall be used;

(3) That the information may be disclosed only to the parties, their attorneys, and their designated expert witnesses; and

(4) That the disclosed information may be used in the prosecution or defense of this action, but subject to limited confidential treatment. No pleadings, motions, or memoranda filed with the Court will be sealed by the Court, but prior to filing any such materials, the parties shall notify EMMC's attorneys of its intended filing and shall insure that any document from the credentialing file is identified as "confidential" and filed under seal.

---

4. Even the Maine Health Security Act seems to suggest that there is an implied exception to the confidentiality provision (or at least the immuni-

ty provision) in connection with claims against any person acting with "malice." *See* 24 M.R.S.A. § 2511.

## CERTIFICATE

A. The Clerk shall submit forthwith copies of this Order to counsel in this case.

B. Counsel shall submit any objections to this Order to the Clerk in accordance with Fed.R.Civ.P. 72.

*So Ordered.*