**Karen Reuter KROLIKOWSKI,
Plaintiff,**

v.

**UNIVERSITY OF MASSACHUSETTS,
et al., Defendants.**

**No. Civ.A. 00–11947–PBS.**

United States District Court,
D. Massachusetts.

June 18, 2001.

Patricia A. Washienko, Perkins, Smith & Cohen, Boston, MA, Sara Rapport, Perkins, Smith & Cohen, LLP, Boston, MA, for Karen Reuter Krolikowski.

Richard C. Van Nostrand, Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, for University of Massachusetts Memorial Medical Center and Edward Smith, M.D.

A. David Mazzone, United States District Court, Boston, MA, ADR Provider, pro se.

## *ORDER ON VARIOUS DISCOVERY MOTIONS*

DEIN, United States Magistrate Judge.

This matter came before this court on June 15, 2001 for hearing on various discovery motions. For the reasons detailed herein, the court rules as follows:

In regards to the "Plaintiff's Motion to Compel" (Docket # 9), the plaintiff seeks an order compelling the defendants to respond to interrogatories and produce documents responsive to requests previously served on the defendants. The defendants oppose the requests (see "Defendants' Motion for Protective Order" (Docket # 12)) to the extent that said requests cover information protected by the medical "peer review" statute detailed at Mass.Gen.Laws ch. 111, § 204. The plaintiff contends that the documents she seeks are not protected by this Massachusetts statute. Rather, the plaintiff argues that federal privilege law applies to this action, which, upon review of the allegations of this case, merit the disclosure of medical peer review documents.

The plaintiff Dr. Karen Reuter Krolikowski ("Dr.Krolikowski"), a physician and currently a Professor of Radiology and Obstetrics/Gynecology, brought this action against her employer, the University of Massachusetts Memorial Medical Center ("UMMC"), claiming among other things, that throughout her employment she has been paid at a rate less then her male counterparts. The plaintiff alleges violations of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1(K), and the Equal Pay Act, 29 U.S.C. §§ 206(d), and claims under the Massachusetts Fair Employment Practice Act, Mass.Gen.Laws ch. 151B, § 4, and the Massachusetts Equal Pay Act, Mass.Gen.Laws ch. 149, § 105A. All counts allege discrimination on the basis of sex in the terms and conditions of her employment. Also asserted are state law claims for breach of contract, tortious interference with advantageous relations, and defamation.[1]

---

1. The plaintiff's claims for tortious interference with advantageous relations and for defamation are asserted against defendant Dr. Edward Smith, the Chairman of the Department of Radiology at UMMC.

■ This court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367(a) (supplemental jurisdiction). Federal Rule of Evidence 501 governs the choice of law regarding privileges. According to Fed.R.Evid. 501, if federal substantive law controls a civil case, federal common law would control the question of privilege. If however, state substantive law controls, as in diversity cases, a federal court is to use applicable state law privilege. *See* Fed.R.Evid. 501. In a federal question case where the court is also hearing state law claims pursuant to supplemental jurisdiction, federal privilege law governs the claims in the action. *See Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 226–27 (D.Mass.1997) (citing cases); *see also Marshall v. Spectrum Medical Group*, 198 F.R.D. 1, 2–3 (D.Me.2000) (applying federal privilege law in case involving a federal claim under ADA and seven state law claims); *Patt v. Family Health Sys., Inc.* 189 F.R.D. 518, 523–24 (D.Wis. 1999); *Robertson v. Neuromedical Ctr.*, 169 F.R.D. 80, 82–83 (M.D.La.1996).

■ Federal courts have been reluctant to adopt a peer review privilege into federal common law. *See, e.g., Univ. of Pa. v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990) (holding in an action brought under Title VII that neither federal common law nor the First Amendment warranted the recognition of a privilege for the peer review materials for a university making a tenure assessment). When deciding whether to adopt a federal privilege, courts often weigh the competing interests by " 'balancing the public's need for the full development of relevant facts in federal litigation against the countervailing demand for confidentiality in order to achieve the objectives underlying the privilege in issue.' " *Holland v. Muscatine Gen. Hosp.*, 971 F.Supp. 385, 389

(S.D.Iowa 1997) (quoting 2 J. Weinstein, M. Burger, J. McLaughlin, *Weinstein's Evidence,* ¶ 501[03] ); *Syposs v. United States,* 179 F.R.D. 406, 409 (W.D.N.Y.1998) (same). "When not federally adopted, privileges provided by the law of the forum state should be respected to the extent this can be accomplished at no substantial cost to federal substantive and procedural policy." *Holland,* 971 F.Supp. at 389 (internal quotation and citations omitted); *see also Johnson v. Nyack Hosp.,* 169 F.R.D. 550, 559 (S.D.N.Y.1996). Although no Massachusetts court has addressed the issue, many federal courts have declined to adopt a state's medical peer review privilege statute into federal common law. This is especially true in the context of federal discrimination cases. *See Marshall,* 198 F.R.D. at 5; *Patt,* 189 F.R.D. at 524–25; *Holland,* 971 F.Supp. at 389–90; *Robertson,* 169 F.R.D. at 83; *Nyack Hosp.,* 169 F.R.D. at 559–61.

■ The First Circuit has adopted a two-part test to determine whether a federal court should recognize a state evidentiary privilege. *See In re Hampers,* 651 F.2d 19, 22 (1st Cir.1981); *Marshall,* 198 F.R.D. at 3–4. First, the court must determine whether Massachusetts would recognize the privilege asserted by the defendants. *See id.* The answer in this case is clearly in the affirmative. Second, the court must then determine whether the privilege is "intrinsically meritorious." *See id.* Although many factors are relevant to this inquiry, this court must assess "whether the injury that would inure to the relation by the disclosure of the communications [would be] greater than the benefit thereby gained for the correct disposal of litigation." *Hampers,* 651 F.2d at 23.

■ As already mentioned, in cases involving discrimination claims, courts have often declined to adopt the state stat-

utory peer review privileges after balancing the litigants' needs in a discrimination suit with the objectives underlying the medical peer review privilege. On one side, the fundamental purpose of the peer review privilege statute is to promote quality health care. *See Swatch v. Treat,* 41 Mass.App.Ct. 559, 563, 671 N.E.2d 1004, 1007 (1996) ("The objective of peer review is rigorous and candid evaluation of professional performance by a provider's peers"). However, weighing heavily on the other side is Congress' recognition of the substantial costs of gender discrimination and the "high value of the vindication of civil rights." *Patt,* 189 F.R.D. at 524; *accord Univ. of Pa.,* 493 U.S. at 193, 110 S.Ct. at 584. As such, access to relevant information is necessary in order for the plaintiff to attempt to support her alleged claims of discrimination. Moreover, "[d]isclosure of documents and information bearing primarily on employment issues does not materially conflict with the fundamental objectives of promoting quality health care served by the peer review principle." *Holland,* 971 F.Supp. at 389. With a protective order in place, the impact of disclosure of peer review 'communications is lessened and the balance tips in favor of the plaintiff.

 In conjunction with this motion and consistent with this court's ruling in regards to "peer review" documents, the court also adopts the agreed upon Confidentiality Agreement submitted to the court as Exhibit C to the Defendants' Memorandum (Docket # 15), with the following modification: the court strikes the last sentence of Paragraph 1 which reads "Pursuant to Massachusetts General Laws c. 111, § 204, the proceedings, reports and records of medical peer review committees are not discoverable."

Based on the above reasoning, it is hereby ORDERED:

1. The "Plaintiff's Motion to Compel" (Docket # 9) is ALLOWED.

2. The "Defendants' Motion for Protective Order" (Docket # 12) is ALLOWED to the extent that the court adopts the Confidentiality Agreement detailed *supra,* and the motion is DENIED to the extent its seeks to exclude from discovery peer review materials.

3. In relation to the "Defendants' Motion to Extend Time" (Docket # 13), the "Defendants' Motion to Compel" (Docket # 14), and the "Plaintiff's Motion for Protective Order" (Docket # 18), the defendants are to respond to document requests and interrogatories by June 25, 2001 and the plaintiff is to be deposed no earlier than July 6, 2001. Documents labeled "Attorney's Eyes Only" will be produced by defendants at the end of the plaintiff's deposition.

4. All requests for attorney's fees and costs in conjunction with the various motions are DENIED.