In re: ADMINISTRATIVE SUBPOENA BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, INC.

No. 05–10041–PBS.

United States District Court, D. Massachusetts.

July 28, 2005.

Jeremy M. Sternberg, United States Attorney's Office, Boston, MA, for U.S.

**MEMORANDUM AND ORDER ON GOVERNMENT'S MOTION TO COMPEL BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, INC. TO PRODUCE DOCUMENTS WITHHELD ON THE BASIS OF THE ASSERTION OF A PEER REVIEW PRIVILEGE (# 2)**

COLLINGS, United States Magistrate Judge.

### I.   The Issue

The question raised by the Government's motion is whether Blue Cross Blue Shield of Massachusetts, Inc. ("Blue Cross") may decline to produce documents in response to an administrative subpoena upon the assertion of a peer review privilege.

## II. The Facts

The United States has been investigating a physician practicing in Massachusetts who was a "provider" in the network of Blue Cross. According to an *ex parte* affidavit of a Special Agent of the Department of Health and Human Services, Office of Investigations, there is reason to believe that this physician has been diagnosing patients with a rare disease who either do not have the disease or who have not been subjected to enough tests to determine whether or not they have the disease. It is suspected that the physician then bills Medicaid and/or Medicare fraudulently for a quite expensive specialized treatment which is used to treat patients with the disease. The Government has been investigating whether this conduct amounts to health care fraud.

Pursuant to this investigation, the United States subpoenaed a multitude of documents from Blue Cross. Blue Cross complied with the subpoena with one exception—it declined to produce documents relating to its Medical Peer Review Committee that is in the process of conducting an internal investigation of the physician but has not yet completed its work.

It is to be noted that the first thing that the Medical Peer Review Committee did was to review all documentation generated in an investigation of the physician by Blue Cross' Fraud Prevention and Investigative Unit. This documentation, including two expert reports, has been produced by Blue Cross pursuant to the subpoena. (# 5 at p. 4, n. 3)

## III. Discussion

The peer review privilege, which is recognized by the majority of states, including Massachusetts, insures that all medical peer review committee documents and proceedings are not subject to discovery or being introduced into evidence. *See* Mass. Gen. Laws, c. 111, § 204(a) (2003). The rationale behind recognizing a peer review privilege is to foster openness and honesty in these proceedings. *See generally* 81 Am.Jur.2d Witnesses § 527 (1976). The fear is that the openness and honesty could be impeded if it were known that documents relating to these proceedings were discoverable in later proceedings. *Id.*

Although most states recognize a peer review privilege, the privilege has yet to be recognized by the Congress or the federal courts. The government correctly points out that Congress could easily have created a peer review privilege if it had wanted when it enacted the Health Care Quality Improvement Act of 1986. *Accreditation Ass'n for Ambulatory Health Care, Inc. v. United States of America,* 2004 WL 783106 at \*3 (N.D.Ill., 2004).[1] In that Act, Congress sought to improve the quality of medical care and decrease medical malpractice by encouraging nationwide implementation of peer review. Title 42 U.S.C. § 11101 *et seq.* (1986).

Blue Cross acknowledges that there is no extant federal peer review privilege and that most federal courts, including the Supreme Court, have declined to recognize a state peer review privilege in a federal case. *See University of Pennsylvania v. EEOC,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *Krolikowski v. Univ. of Massachusetts,* 150 F.Supp.2d 246, 248 (D.Mass.2001); *United States ex rel. Roberts v. QHG of Indiana, Inc.,* 1999 WL 33243495 (D.Ind., 1999); *Accreditation Ass'n.,* 2004 WL 783106; *United States v. United Network for Organ Sharing,* 2002 WL 1726536 (N.D.Ill., 2002). Five years ago, Judge Kravchuk, in the case of *Marshall v. Spectrum Medical Group,* 198

---

1. Hereinafter, "Accreditation Ass'n."

F.R.D. 1 (D.Me.2000), found that "[f]ederal courts are evenly split over whether a medical peer review privilege exists under federal common law." *Marshall*, 198 F.R.D. at 4–5 (citations omitted). Blue Cross avers that, in the circumstances of the instant case, its assertion of the privilege should be sustained after the Court engages in a balancing analysis.

Despite the holdings in other jurisdictions, the Court, sitting as it does in the First Circuit, is bound by its law. It is clear that in the First Circuit, a balancing test is to be applied. *In Re Hampers*, 651 F.2d 19, 22–3 (1 Cir., 1981). Lower courts in the First Circuit have routinely applied the test set forth in *Hampers*. *See Krolikowski*, 150 F.Supp.2d at 248–9; *Marshall*, 198 F.R.D. at 3–5; *Smith v. Alice Peck Day Memorial Hospital*, 148 F.R.D. 51, 53–56 (D.N.H.1993).

The First Circuit's test is that a state privilege should be recognized in a federal case if a) the forum state recognizes the privilege, and b) the privilege is "intrinsically meritorious." *Hampers*, 651 F.2d at 22. The Government concedes that Massachusetts would recognize the privilege. *See* Government's Memorandum, Etc. # 3 at p. 7. Whether the privilege is "intrinsically meritorious" is determined by applying Wigmore's formulation which requires a four-part analysis:

> (i) whether the communications "originate in a confidence that they will not be disclosed";
>
> (ii) whether this element of confidentiality is "essential to the full and satisfactory maintenance of the relations between the parties";
>
> (iii) whether the relationship is a vital one that "ought to be sedulously fostered"; or
>
> (iv) whether "the injury that would inure to the relation by the disclo-

> sure of the communications [would be] greater than the benefit thereby gained for the correct disposal of litigation."

*See Hampers*, 651 F.2d at 22–23 (quoting 8 J. WIGMORE, EVIDENCE § 2285, at 527 (McNaughton rev.1961)). *Marshall*, 198 F.R.D. at 4 (footnote omitted).

The Court finds that the first three factors are met in this case. Indeed, in most cases decided in this Circuit, courts have not questioned the value of the privilege, the necessity of confidentiality to foster the peer review process, and that it ought to be protected. *Krolikowski*, 150 F.Supp.2d at 248; *Marshall*, 198 F.R.D. at 4; *Smith*, 148 F.R.D. at 56. What tipped the balance in favor of disclosure of the peer review materials in the *Krolikowski* and *Marshall* cases was the fourth factor—i.e., that "the injury that would inure to the relation by the disclosure of the communications ..." was *not* " ... greater than the benefit thereby gained for the correct disposal of litigation." *Hampers*, 651 F.2d at 22–23 (quoting 8 J. WIGMORE, EVIDENCE § 2285, *supra* ).

In *Krolikowski*, the plaintiff, a physician, brought claims of unlawful sex discrimination and unequal pay against her employer, a hospital, and sought peer review records. Judge Dein ruled that the plaintiff needed the peer review documents to support her claims, and considering the strong public policy against gender discrimination and in favor of the vindication of individual civil rights, the peer review privilege must give way. *Krolikowski*, 150 F.Supp.2d at 249.

In *Marshall*, the plaintiff, a physician, sued the medical group by whom he was previously employed for terminating him and in so doing, abused the peer review process. Judge Kravchuk ruled that the

"correct disposal of the litigation" required disclosure since the case involved allegations of abuse of the peer review process and because plaintiff and/or his psychiatrist had already seen the documents, the defendant medical group should have access also. *Marshall,* 198 F.R.D. at 5 (citations omitted).

■ In the instant case, the United States is conducting a criminal investigation into the activities of a physician. The issue then, is, in Wigmore's words, "whether the injury that would inure to the relation by the disclosure of the communications [would or would not be] greater than the benefit thereby gained for the correct disposal of litigation."

With respect to "... the injury which would inure to the relationship," Blue Cross has submitted the Affidavit of the Medical Director of Blue Cross Blue Shield who also acted as Chair of the Medical Peer Review Committee with respect to the physician whose conduct the United States is investigating. In his Affidavit, the Medical Director writes:

> Blue Cross believes that its ability to conduct peer review of providers in its networks will be hampered if ordered to produce materials it deems protected by the medical peer review privilege. While it is difficult at times to retain outside consultants to perform the reviews necessary for the process, it would be almost impossible to retain the experts if the process were subject to public disclosure. Moreover, other institutions might be unwilling to share information with Blue Cross if Blue Cross is unable to maintain the confidentiality of this information.

Affidavit # 6 ¶ 8.

The United States paints the "benefit gained" by disclosure with a broad brush. It argues that the balancing does not require much thought because it is engaged in a criminal health care fraud investigation, and "[t]he underlying purpose of the federal health care fraud investigation is to combat fraud against the federal government, fraud which costs American taxpayers billions of dollars every year ...". (# 3 at pp. 8–9)

While no one would dispute the importance of such criminal investigations, a more case-specific analysis is required. The case of *In Re Hampers* dealt with a criminal investigation into violations of various federal criminal statutes relating to arson, insurance fraud and tax evasion and the interposition of a state statute prohibiting disclosure of state tax information. As Judge Coffin wrote in that case, Wigmore's fourth query compelled the Court "... to seek a more particularistic answer than the macrocosmic one that federal criminal law enforcement is more important than state tax collection." *Hampers,* 651 F.2d at 23. In my judgment, the Government must give a more "particularistic answer" in the instant case than that it is conducting a criminal health care fraud investigation before the Court should order disclosure of privileged peer review materials.

Ostensibly to meet this burden, the Government has submitted the *Ex Parte* Affidavit of a Special Agent of the Department of Health and Human Services (# 4). If that is the purpose, it fails in the attempt. While details of the investigation are related, there is nothing to indicate why the peer review records are particularly needed.

It is to be noted that Blue Cross has turned over all other records, including all documentation generated in an investigation of the physician by Blue Cross' Fraud Prevention and Investigative Unit. This documentation includes two expert reports. (# 5 at p. 4, n. 3) Nothing in the

Special Agent's Affidavit indicates why, with this degree of disclosures about the alleged offending physician having been made, there is a need for the peer review records.

Again, the opinion in the *Hampers* case is instructive. As Judge Coffin notes:

> We can easily see that if a state tax return contained the only key evidence to resolving a serious federal crime, the balance [set forth in Wigmore's fourth inquiry] would tilt in favor of the federal government. But if a return contained information that would be easily obtained elsewhere and at best would constitute only cumulative evidence impeaching one of several witnesses, we might have second or third thoughts.

*In Re Hampers*, 651 F.2d at 23 (citation omitted).

### IV. Conclusion and Order

Applying the fourth Wigmore inquiry as required by the holding in the *Hampers* case, Blue Cross has demonstrated that "injury would inure" to the peer review process if disclosure were ordered. The Court rules that the Government has failed to demonstrate, in the particular circumstances of this case, that the benefit gained from disclosure of the peer review records would be greater than that injury.[2] Accordingly, it is ORDERED that the Government's Motion to Compel, Etc. (# 2) be, and the same hereby is, DENIED.

---

**2.** It may be that the resolution the Court reaches in the instant case is that Blue Cross has a qualified privilege under federal common law (as the First Circuit held that Commissioner of Revenue did in the *Hampers* case) to withhold the documents from disclosure, since the Court concedes that if the Government were able to make a particularized showing of need for these documents, the privilege would give way. *See In Re Hampers*, 651 F.2d at 23. So long as application of the Wigmore inquiries can result in an order of disclosure, any state created privilege not recognized in federal law would have denoted a qualified one at federal common law.